**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

DBW PARTNERS, LLC
d/b/a THE CAPITOL FORUM,                    :

                                            :

                         Plaintiff,         :

                                            :

            v.                              :

                                            :

BLOOMBERG, L.P. and
BLOOMBERG FINANCE, L.P.,                    :

                                            :

                         Defendants.        :

| | |
|---|---|
| : | |
| : | |
| : | Case No.: 19-cv-3715-RBW |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**Table of Contents**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 4

    A.    Capitol Forum ...................................................................................... 4

    B.    Bloomberg............................................................................................ 5

    C.    Bloomberg's Solicitation Of Capitol Forum Subscribers ..................... 6

III.   STANDARD OF REVIEW ............................................................................ 7

    A.    Rule 12(b)(6)....................................................................................... 7

IV.   ARGUMENT ................................................................................................. 8

    A.    The Complaint States Valid Claims For Direct Copyright Infringement ............... 8

    B.    The Complaint States Valid Claims For Contributory Copyright Infringement  . 10

        1.    The Law On Contributory Infringement.................................... 10

        2.    Bloomberg Has Routinely Engaged In Contributory Infringment .......... 13

        3.    The First Amendment Is No Defense To Copyright Infringement .......... 15

        4.    Bloomberg "Substantially Participated" In Infringing Activities ............. 19

    C.    The Statute Of Limitations Does Not Bar Any Of The Copyright Claims .......... 20

    D.    Capitol Forum's Publications Are Protected Under The Hot News Doctrine ...... 21

        1.    The Hot News Doctrine Is Necessary To Prevent Free-Riding and Encourage High Quality Journalism....................................... 23

        2.    Capitol Forum's Hot News Claim Is Not Preempted ............... 26

        3.    Capitol Forum Has Properly Pleaded A Hot News Misappropriation Claim ............................................................ 28

            i.    The Complaint Sufficiently Alleges The Copying Of Time Sensitive

Facts ........................................................................................... 29

ii.    Free-Riding Exists Regardless Of Attribution ............................ 29

iii.   Capitol Forum Acts As A News Organization In Acquiring And Reporting The Facts .................................................................... 31

iv.    Capitol Forum Need Not Plead That Bloomberg's Practices Will Put It Out Of Business ....................................................................... 32

V.    CONCLUSION ............................................................................................. 34

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

*2910 Georgia Ave. LLC v. D.C.,*
    983 F. Supp. 2d 127 (D.D.C. 2013) ...............................................................................8

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001), *as amended* (Apr. 3, 2001).......................................11, 12

*Anti-Defamation League of B'nai B'rith v. Superior Court,*
    67 Cal. App. 4th 1072 (1998) ......................................................................................18

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010)..........................................................................................11

*Arista Records LLC v. Greubel,*
    453 F. Supp. 2d 961 (N.D. Tex. 2006) .................................................................. 10

*Associated Press v. All Headline News Corp.,*
    608 F. Supp. 2d 454 (S.D.N.Y. 2009)........................................................................27, 33

*Balsley v. L.F.P., Inc.,*
    No. 1:08-cv-491, 2008 WL 11378897 (N.D. Ohio Dec. 2, 2008) ....................................20

*BanxCorp v. Costco Wholesale Corp.,*
    723 F. Supp. 2d 596 (S.D.N.Y. 2010)........................................................................27

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.,*
    650 F.3d 876 (2d Cir. 2011)............................................................................. *passim*

*Brown v. Earthboard Sports USA, Inc.,*
    481 F.3d 901 (6th Cir. 2007) ........................................................................................28

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)...............................................................12, 13, 14

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
    902 F.2d 829 (11th Cir. 1990) ......................................................................................15

*Call of the Wild Movie, LLC v. Does 1-1,062,*
    770 F. Supp. 2d 332 (D.D.C. 2011) ..........................................................................2, 15

*Capitol Records, Inc. v. Foster,*
    No. 04-cv-1569, 2007 WL 1028532 (W.D. Okla. Feb. 6, 2007)......................................19

*Ciralsky v. C.I.A.*,
   355 F.3d 661 (D.C. Cir. 2004) .......................................................................................20

*Cohen v. Bd. of Trustees of the Univ. of the D.C.*,
   819 F.3d 476 (D.C. Cir. 2016) .......................................................................................20

*CoStar Realty Info., Inc. v. Field*,
   612 F. Supp. 2d 660 (D. Md. 2009) ...............................................................................10

*Display Producers, Inc. v. Shulton, Inc.*,
   525 F. Supp. 631 (S.D.N.Y. 1981) .................................................................................19

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*,
   No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014),
   *report and recommendation adopted*, No. 14-cv-131, 2014 WL 5002092 (S.D.N.Y. Oct.
   7, 2014) .....................................................................................................................25, 26

*Edes v. Verizon Commc'ns, Inc.*,
   417 F.3d 133 (1st Cir. 2005) ..........................................................................................21

*Eldred v. Reno*,
   239 F.3d 372 (D.C. Cir. 2001) .......................................................................................16

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ..................................................................................................16, 17

*Famolare, Inc. v. Melville Corp.*,
   472 F.Supp. 738 (D.Haw. 1979) ....................................................................................26

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ........................................................................................................27

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) ............................................................................13, 14, 20

*Fleck v. Dep't of Veterans Affairs, Office of Inspector Gen.*,
   No. 18-cv-1452, 2020 WL 42842 (D.D.C. Jan. 3, 2020).................................................3

*Fox News Network, LLC v. TVEyes, Inc.*,
   43 F. Supp. 3d 379 (S.D.N.Y. 2014).................................................................22, 23, 33

*Fridman v. Bean LLC*,
   No. 17-cv-2041, 2019 WL 231751 (D.D.C. Jan. 15, 2019)..............................................3

*GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.*,
   27 Md. App. 172 (Md. Ct. Spec. App. 1975) ............................................................28, 30

*Gaines v. D.C.*,
   961 F. Supp. 2d 218 (D.D.C. 2013) ......................................................................9

*Gershwin v. Columbia Artists*,
   443 F.2d 1159 (2d Cir. 1971)....................................................................12, 14

*Gill v. D.C.*,
   872 F. Supp. 2d 30 (D.D.C. 2012) ...................................................................7

*Gordon v. Pearson Educ., Inc.*,
   85 F. Supp. 3d 813 (E.D. Pa. 2015) ....................................................11, 13, 14

*Hard Drive Prods., Inc. v. Does 1-1,495*,
   892 F. Supp. 2d 334 (D.D.C. 2012) ...............................................................2, 15

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)...........................................................................2, 15

*Home & Nature, Inc. v. Sherman Specialty Co.*,
   322 F.Supp.2d 260 (E.D.N.Y. 2004) ..............................................................11

*Houchins v. KQED, Inc.*,
   438 U.S. 1 (1978)..............................................................................24

*Ibrahim v. Titan Corp.*,
   391 F. Supp. 2d 10 (D.D.C. 2005) .................................................................28

*Ideal Toy Corp. v. Kenner Prod. Div. of Gen. Mills Fun Grp., Inc.*,
   443 F. Supp. 291 (S.D.N.Y. 1977) .............................................................30, 31

*In re Aimster Copyright Litig.*,
   334 F.3d 643 (7th Cir. 2003) .......................................................................11

*Intercom Ventures, LLC v. FasTV, Inc.*,
   No. 13-cv-232, 2013 WL 2357621 (N.D. Ill. May 28, 2013)..........................................10

*Int'l News Serv. v. Associated Press*,
   248 U.S. 215 (1918)...................................................................23, 27, 29, 30

*Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*,
   No. 8:08-cv-1227, 2009 WL 963130 (M.D. Fla. Apr. 8, 2009) ........................................10

*Krasselt v. Joseph E. Seagram & Sons,*
    2002 WL 1997926 (S.D.N.Y. Aug. 29, 2002) ................................................................. 11

*Landmark Commc'ns, Inc. v. Virginia,*
    435 U.S. 829 (1978) ............................................................................................................ 18

*Luck's Music Library, Inc. v. Ashcroft,*
    321 F. Supp. 2d 107 (D.D.C. 2004), *aff'd sub nom., Luck's Music Library, Inc. v.*
    *Gonzales,* 407 F.3d 1262 (D.C. Cir. 2005) ........................................................................ 17

*Lupian v. Joseph Cory Holdings LLC,*
    905 F.3d 127 (3d Cir. 2018)............................................................................................... 28

*McDonald v. K-2 Indus., Inc.,*
    108 F. Supp. 3d 135 (W.D.N.Y. 2015) ............................................................................. 10

*Mead v. Lindlaw,*
    839 F. Supp. 2d 66 (D.D.C. 2012) ...................................................................................... 7

*Menominee Indian Tribe of Wisconsin v. United States,*
    136 S. Ct. 750 (2016).................................................................................................... 3, 21

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005)............................................................................................ 12, 14, 19

*Monotype Imaging, Inc. v. Bitstream, Inc.,*
    376 F. Supp. 2d 877 (N.D. Ill. 2005) ................................................................................ 11

*Nat'l Basketball Ass'n v. Motorola, Inc.,*
    105 F.3d 841 (2d Cir. 1997).................................................................... 4, 22, 27, 32, 33

*New England Tel. & Tel. Co. v. National Merchandising Corp.,*
    141 N.E.2d 702 (Mass. 1957) ........................................................................................... 26

*New Era Publications Int'l, ApS v. Henry Holt & Co.,*
    873 F.2d 576 (2d Cir. 1989).............................................................................................. 17

*Newborn v. Yahoo!, Inc.,*
    391 F. Supp. 2d 181 (D.D.C. 2005)............................................................. 11, 12, 13, 19

*Nicholson v. McClatchy Newspapers,*
    177 Cal. App. 3d 509 (Ct. App. 1986).............................................................................. 18

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*
    166 F.3d 65 (2d Cir. 1999)................................................................................................ 17

*Oak Indus., Inc. v. Zenith Elecs. Corp.,*
   697 F. Supp. 988 (N.D. Ill. 1988) ...................................................................12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007) .........................................................................19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ....................12

*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,*
   982 F. Supp. 503 (N.D. Ohio 1997) ....................................................13, 14, 20

*Prunte v. Universal Music Grp.,*
   484 F. Supp. 2d 32 (D.D.C. 2007) ...............................................................1, 9

*Prunty v. Vivendi,*
   130 F. Supp. 3d 385 (D.D.C. 2015) ...................................................................9

*Quiroga v. Fall River Music, Inc.,*
   No. 93-cv-3914, 1998 WL 851574 (S.D.N.Y. Dec. 7, 1998) ...........................19

*Rudkowski v. MIC Network, Inc.,*
   No. 17-cv-3647, 2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018)..........................9

*Scott-Blanton v. Universal City Studios Prods. LLLP,*
   539 F. Supp. 2d 191 (D.D.C. 2008), *aff'd,* 308 F. App'x 452 (D.C. Cir. 2009).................9

*Seminole Tribe of Fla. v. Times Pub. Co.,*
   780 So. 2d 310 (Fla. Dist. Ct. App. 2001) .......................................................18

*Smith v. Daily Mail Pub. Co.,*
   443 U.S. 97 (1979)....................................................................................17, 18

*Sony Music Entm't Inc. v. Does 1-40,*
   326 F. Supp. 2d 556 (S.D.N.Y. 2004)..............................................................16

*Sturdza v. United Arab Emirates,*
   281 F.3d 1287 (D.C. Cir. 2002) ....................................................................1, 9

*United States v. Collins,*
   364 F. App'x 496 (10th Cir. 2010) ..................................................................21

*United States v. Gen. Elecs., Inc.,*
   556 F. Supp. 801 (D.N.J. 1983) ......................................................................21

*United Video, Inc. v. F.C.C.,*
    890 F.2d 1173 (D.C. Cir. 1989) ................................................................2, 17

*Universal City Studios, Inc. v. Reimerdes,*
    82 F.Supp.2d 211 (S.D.N.Y. 2000) ........................................................16, 17

*Water Techs. Corp. v. Calco, Ltd.,*
    850 F.2d 660 (Fed. Cir. 1988) ....................................................................12

*Webceleb, Inc. v. Procter & Gamble Co.,*
    No. 10-cv-2318, 2012 WL 460472 (S.D. Cal. Feb. 13, 2012) ...........................2

*X17, Inc. v. Lavandeira,*
    563 F. Supp. 2d 1102, 1107 (C.D. Cal. 2007) ................................................27

**Rules:**

Fed. R. Civ. P. 8 ...........................................................................................10

Fed. R. Civ. P. 12(b)(6) ..............................................................1, 7, 9, 15, 20

**Statutes:**

28 U.S.C. Section 1367(d) ...............................................................................20

**Other Sources:**

Lindsay G. Rabicoff,
    Comment, *The Hot News Misappropriation Doctrine: Confusion in the Internet Age and the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012) .......................................24

Edmund J. Sease,
    *Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?*, 70 N.D. L. Rev. 781, 801 (1994) .............................................................................25, 26

DBW Partners LLC, doing business as The Capitol Forum ("Capitol Forum"), respectfully files this brief in opposition to the motion to dismiss the complaint filed by defendants Bloomberg L.P. and Bloomberg Finance L.P. (collectively "Bloomberg").

## I.   INTRODUCTION

Bloomberg has moved to dismiss Capitol Forum's complaint, asserting that: (1) the direct infringement claim should be dismissed because Capitol Forum did not plead that Bloomberg's articles are "substantially similar" to the protected works; (2) the contributory infringement claim should be dismissed because Bloomberg enjoys a First Amendment privilege to exchange copyrighted documents with its "sources;" (3) the statute of limitations bars certain of the copyright claims because this Court dismissed Capitol Forum's previous lawsuit in its entirety; and (4) the misappropriation claim fails to state a cause of action.

With respect to the direct infringement claim, "substantial similarity" is not an issue to be addressed at the motion to dismiss phase, and this Court has so stated.  In its Opinion and Order of November 12, 2019 dismissing Capitol Forum's earlier lawsuit, this Court observed that it "need not engage in the substantial similarity analysis at this juncture." *See* Dkt. 22 at 6.[1] "Substantial similarity" is a fact laden matter to be addressed at trial, or on summary judgment. *See Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("[b]ecause substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation."); *see also Prunte v. Universal Music Grp.,* 484 F. Supp. 2d 32, 41 (D.D.C. 2007) ("[s]ubstantial similarity is a question that should be decided either by a factfinder at trial or, in some cases, in the context of a motion for summary judgment, not on a motion to dismiss for failure to state a claim under Rule 12(b)(6).").  Further,

---

[1] The docket number reflects the filing in *DBW Partners, LLC, d/b/a The Capitol Forum v. Bloomberg, L.P., et al.,* No. 19-311 (D.D.C.) (the "Prior Action").

this Court dismissed the prior complaint because Capitol Forum had failed to "identify the specific infringed works that form the basis for Capitol Forum's copyright claims."  Dkt. 22 at 8.[2]  That pleading defect has been remedied in the present Complaint.  And in response to Bloomberg's earlier criticism that Capitol Forum had not identified the infringing Bloomberg articles, *Id.* at 6, that issue has been addressed as well.  The Complaint sets forth, in Paragraph 32, the titles of each Capitol Forum copyrighted article and each Bloomberg infringing article, along with the dates of publication.  *See* Dkt. 1 ¶ 32.

Regarding the contributory infringement claim, Bloomberg's First Amendment defense turns a blind eye toward settled copyright doctrine.  Following the Supreme Court's decision in *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-60, 569 (1985), the courts in this circuit (and all circuits) have consistently held **there is no First Amendment right to engage in copyright infringement.**  *See United Video, Inc. v. F.C.C.,* 890 F.2d 1173, 1191 (D.C. Cir. 1989); *Hard Drive Prods., Inc. v. Does 1-1,495,* 892 F. Supp. 2d 334, 338 (D.D.C. 2012) ("the First Amendment's protection is not absolute and does not extend to copyright infringement."); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 349 (D.D.C. 2011) ("[c]opyright infringement is not protected by the First Amendment.").  Bloomberg's ostensible support for this privilege assertion also rests upon inapposite cases having nothing to do with copyright law and applicable only to instances in which the defendant legally obtained the information from its "sources."

It should also be noted that this supposed privilege issue is an affirmative defense, which is usually not appropriate for resolution on a motion to dismiss.  *See Webceleb, Inc. v. Procter & Gamble Co.,* No. 10-cv-2318, 2012 WL 460472, at *3 (S.D. Cal. Feb. 13, 2012) ("the issue of

---

[2] Referring to Prior Action.

the First Amendment [is an] affirmative defense[] to Plaintiff's claims" and is therefore "inappropriate for resolution on a motion to dismiss."); *Fridman v. Bean LLC*, No. 17-cv-2041, 2019 WL 231751, at *4 (D.D.C. Jan. 15, 2019) ("A plaintiff . . . is not required to negate an affirmative defense in [the] complaint, and resolution of an affirmative defense is proper on a motion to dismiss only if the facts required to establish the defense are apparent on the face of the complaint.") (internal quotations omitted). "Because this is not an instance in which all the facts necessary to rule on [the] affirmative defense are alleged on the face of the complaint, ruling on the [First Amendment] defense on a motion to dismiss would be premature." *Fleck v. Dep't of Veterans Affairs, Office of Inspector Gen.,* No. CV 18-1452 (RDM), 2020 WL 42842, at *6 (D.D.C. Jan. 3, 2020) (internal quotations omitted). Finally on the contributory issue, Bloomberg's alternative argument that its activities in soliciting third-party copyright infringement did not rise to the level of "substantial participation" is based on a misstatement of the facts plead in the Complaint and a misunderstanding of the law.

Bloomberg's assertion that certain claims should be dismissed as untimely fares no better and ignores Supreme Court precedent regarding equitable tolling. As the Court held in *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016), a litigant is entitled to equitable tolling if it has been diligent in pursuing its claim, yet was nevertheless time barred because of some extraordinary circumstance "outside its control." The dismissal of the earlier case without the ability to amend, with the subsequent effect of losing claims that had been diligently pursued, should be considered an extraordinary circumstance, entitling Capitol Forum to apply the equitable tolling doctrine. And because the statute of limitations is an

affirmative defense, the matter should not be dismissed on a motion to dismiss—at least without consideration of the equitable tolling doctrine.

The tort of "hot news" misappropriation is properly pleaded.  The elements of this claim, as enunciated in *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 852-53 (2d Cir. 1997) have been alleged with particularity.  While Bloomberg is correct that this doctrine is a narrow one, the facts giving rise to this free-riding cause of action fit perfectly within its narrow structure.  As the Second Circuit observed in its most recent decision on the doctrine, this type of misappropriation claim is appropriate in situations in which the plaintiffs "collect and disseminate" public facts and the defendants then "copy" those facts.  *See Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876, 905-06 (2d Cir. 2011).  That is precisely what occurred and what is pleaded in this case.

## II.   BACKGROUND

### A.  Capitol Forum

Capitol Forum is an investigative news and analysis company, in the business of providing time-sensitive and in-depth reports to its subscribers, including investors, industry stakeholders, law firms and policymakers.  Founded in 2012, it publishes a premium internet-based subscription service, releasing anywhere between 30 and 50 reports each month on matters relating to mergers and acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement.  Capitol Forum's reports are extensively researched and carefully written, often the product of months of work, and its subscribers rely on these reports to make investment and business decisions.  Given the respected nature of Capitol Forum and its journalists, the release of its reports will often affect the price of publicly traded stocks—and will do so in a matter of minutes.  Dkt. 1 ¶ 2.

Capitol Forum's reports constitute a fundamental and competitively significant component of its business and are duly registered with the United States Patent and Copyright Office.  These reports are provided only to its subscribers and to other authorized recipients.  All subscribers must sign a subscription agreement in which they agree not to transmit or reproduce the copyrighted material, and each report contains a copyright notice and disclosure stating that its contents may not be distributed or reproduced without Capitol Forum's permission:

> © 2017 by the Capitol Forum.  The contents of this email and any proprietary content it enables you to access are copyrighted by The Capitol Forum.  Recipients shall not directly, or indirectly reproduce, download or otherwise distribute (in print, electronic, or intranet format) this content without prior written permission from the Capitol Forum.  Unauthorized reproduction or distribution is a violation of Federal Copyright Law.

*Id.* ¶¶ 3, 21.

## B.  Bloomberg

Bloomberg is one of Capitol Forum's competitors and provides a subscription-based service available to paid subscribers that is in direct competition with Capitol Forum's subscription service.  While both Capitol Forum and First Word provide subscription services to the financial market, their business models are significantly different. Capitol Forum invests heavily in extensive market research and first-hand interviews with market participants and will provide lengthy and in-depth analyses to its subscribers.  Bloomberg, on the other hand, will generally obtain its information from its competitors, including Capitol Forum, which it will quickly repackage and republish to its subscribers.  Bloomberg is not an authorized recipient of Capitol Forum's copyrighted material.  *Id.* ¶¶ 25, 26.

Bloomberg knows that the Capitol Forum publications it received from the Capitol Forum subscribers are copyright protected and cannot be transmitted or copied or summarized without permission.  All Bloomberg publications, including its First Word publications, are

copyrighted, and bear a copyright notice and disclosure.  Bloomberg also enters into subscription agreements with its subscribers, prohibiting the subsequent transmission and reproduction of the First Word reports.  *Id.* ¶ 9.  Bloomberg's website warns its readers that the summarization and copying of its articles is a copyright violation.  And Bloomberg actively enforces its own copyright protections.  For example, in a recent complaint filed in the Southern District of New York, Bloomberg is seeking to prevent any non-subscriber from receiving "the benefit of Bloomberg's labor and expertise without obtaining the necessary data license or paying Bloomberg the requisite fee."  *Id.* ¶¶ 40, 41.

### C.  Bloomberg's Solicitation of Capitol Forum Subscribers

Without authorization from Capitol Forum, and without Capitol Forum's consent, Bloomberg has solicited and induced Capitol Forum subscribers to transmit to it the Capitol Forum copyrighted publications.  Commencing around December 2016, Joshua Fineman of Bloomberg's First Word service has solicited and induced Capitol Forum subscribers to send him the Capitol Forum copyrighted publications.  Mr. Fineman would receive this information in exchange for other publications and market speculation.  Even after one Capitol Forum subscriber informed Mr. Fineman that he would no longer send him the materials, Mr. Fineman found and solicited other Capitol Forum subscribers for the copyrighted information.  *Id.* ¶¶ 26-29.

Despite Capitol Forum's demand, Bloomberg refused to halt its infringing conduct and continued to solicit Capitol Forum subscribers.  *Id.* ¶ 8.  On information and belief, Bloomberg has solicited and induced over 200 separate copyright violations.

Upon receiving these copyrighted articles, Bloomberg will then copy and quote the most creative and original aspects of the Capitol Forum material and redistribute them in a "news

alert" to its own subscribers.  Other than including a market price or a reference to a past article, Bloomberg adds none of its own analysis or contributes any meaningful reporting to Capitol Forum's work.  Bloomberg simply extracts the key information from the Capitol Forum work and repackages it in bullet-point form.  *Id.* ¶ 37.

Bloomberg's conduct in copying and republishing Capitol Forum's time-sensitive material amounts to blatant free-riding, the effect of which is to impair Capitol Forum's incentive to continue to provide the same type of in-depth reporting.  It also reduces the value of its work to the Capitol Forum subscribers.  This conduct causes, and has caused, Capitol Forum subscribers to cancel their subscriptions because they can obtain the same information from Bloomberg.  *Id.* ¶¶ 44, 46.

## III.   STANDARD OF REVIEW

### A.  Rule 12(b)(6)

A court considering a Rule 12(b)(6) motion to dismiss must presume "the factual allegations of the complaint to be true and construe[] them liberally in the plaintiff's favor."  *Gill v. D.C.,* 872 F. Supp. 2d 30, 33 (D.D.C. 2012).  "It is not necessary for the plaintiff to plead all elements of [its] prima facie case in the complaint, or to plead law or match facts to every element of a legal theory[,] [but it] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,] [meaning that] the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 33-34 (internal quotation and citations omitted).

Moreover, "in deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies."  *Mead v. Lindlaw*, 839 F.

Supp. 2d 66, 70 (D.D.C. 2012) (internal citations and quotations omitted); *2910 Georgia Ave.*

*LLC v. D.C.,* 983 F. Supp. 2d 127, 134 (D.D.C. 2013) (same).

## IV.  ARGUMENT

### A.  The Complaint States Valid Claims for Direct Copyright Infringement

Bloomberg's assertions that Capitol Forum's complaint remains deficient because it

does not specifically state that the copyrighted Capitol Forum articles and the infringing

Bloomberg articles are "substantially similar" ignores this Court's ruling in the earlier matter.

First, in its Opinion, this Court dismissed the prior complaint because Capitol Forum failed to

"identify the specific infringed works that form the basis for Capitol Forum's copyright claims."

Dkt. 22 at 8.[3]  That pleading defect has been remedied.  Furthermore, in response to

Bloomberg's earlier complaint that Capitol Forum had not identified the infringing Bloomberg

articles, *Id.* at 6, that issue has been addressed as well.  The Complaint sets forth, in Paragraph

32, the titles of each Capitol Forum copyrighted article and each Bloomberg infringing article,

along with the dates of publication.  *See* Dkt. 1 ¶ 32.

Second, the previous ruling specifically addressed Bloomberg's present contention that

the Complaint does not plead that the Capitol Forum and Bloomberg articles are "substantially

similar."  The issue of substantial similarity is not a pleading requirement, but an element that

must be established at trial, and as the Court observed, it "need not engage in the substantial

similarity analysis at this juncture."  *See* Dkt. 22 at 6.[4]

This court's decision was correct and should not be revisited.  Even the cases

Bloomberg cites in its motion papers show that the "substantial similarity" matter is one that is

---

[3] Referring to Prior Action.

[4] Referring to Prior Action.

8

addressed at trial, or in the context of a summary judgment proceeding, and not on a motion to

dismiss. *See, e.g., Sturdza,* 281 F.3d at 1296 ("[b]ecause substantial similarity is customarily an

extremely close question of fact, summary judgment has traditionally been frowned upon in

copyright litigation."); *Scott-Blanton v. Universal City Studios Prods. LLLP*, 539 F. Supp. 2d

191 (D.D.C. 2008), *aff'd,* 308 F. App'x 452 (D.C. Cir. 2009) (discussing substantial similarity in

context of motion for summary judgment).  Judge Friedman addressed this very issue in *Prunte,*

*supra*, stating that "substantial similarity" requires a two-step process—first identifying which

aspects of the copyrighted material is protected, and second determining the extent to which the

infringing work is substantially similar to the protected aspects of the copyrighted work.  484 F.

Supp. 2d at 41.  Judge Friedman then noted that this analysis is not one that can be done on a

Rule 12(b)(6) motion.  It is a matter for "the fact-finder at trial or, in some cases, on a motion for

summary judgment." *Id.*

      Indeed, the only time that it may be appropriate to depart from this rule and to address

the "substantial similarity" issue on a motion to dismiss is when the complaint attaches both the

copyrighted work and the allegedly infringing work, and the court can therefore determine for

itself that the material is not substantially similar.  *See Prunty v. Vivendi*, 130 F. Supp. 3d 385,

390 (D.D.C. 2015) (where plaintiff attached to his complaint the lyrics of both the alleged

infringed song and the alleged infringing song.); *Gaines v. D.C.,* 961 F. Supp. 2d 218, 224

(D.D.C. 2013) (illustrations of the infringed and infringing works were attached to the

complaint); *Rudkowski v. MIC Network, Inc.,* No. 17-cv-3647, 2018 WL 1801307, at *3

(S.D.N.Y. Mar. 23, 2018) (visual works at issue were attached to the complaint).  This clearly is

not the case here, and the substantial similarity matter is not properly before this Court in this motion to dismiss proceeding.[5]

Moreover, there is no heightened pleading standard in copyright cases, and notice pleading is clearly sufficient under Rule 8 of the Federal Rules of Civil Procedure. *See McDonald v. K-2 Indus., Inc.,* 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015) (stating that "[t]here is no heightened pleading requirement applied to copyright infringement claims; a claim of copyright infringement need only meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."); *Intercom Ventures, LLC v. FasTV, Inc.,* No. 13-cv-232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (stating that "claims for copyright infringement must satisfy the pleading requirements under Rule 8 and need not be pleaded with heightened specificity."); *CoStar Realty Info., Inc. v. Field,* 612 F. Supp. 2d 660, 674 (D. Md. 2009) (stating that "[t]here is no heightened pleading standard for copyright infringement."); *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.,* No. 8:08-cv-1227, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009) (stating that "[c]opyright infringement does not require a heightened standard of pleading[.]"); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 964–65 (N.D. Tex. 2006) (rejecting a heightened pleading standard in cases of alleged copyright infringement and noting that copyright infringement claims "must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8").

## B.  The Complaint States Valid Claims for Contributory Copyright Infringement

### 1.  The Law on Contributory Infringement

As this Court has held, there are three essential elements to a contributory copyright cause of action.  The plaintiff must prove: (1) direct infringement by a third party; (2) knowledge

---

[5] Finally, even were it necessary to plead substantial similarity in a complaint, Capitol Forum's complaint does in fact allege, in Paragraph 56, copying in substantial quantity and quality. *See* Dkt. 1 ¶ 56.

by the defendant of the third-party infringement; and (3) substantial participation by the defendant in the infringing activity. *Newborn v. Yahoo!, Inc.,* 391 F. Supp. 2d 181, 186 (D.D.C. 2005).

The first prong of the contributory infringement analysis—direct copyright infringement by a third party—requires the plaintiff to establish: (a) the identity of the specific copyrighted works that were infringed; (b) proof of ownership to the copyrights in those works; (c) registration of those copyrights; and (d) proof as to the acts and times of the infringements. *Id.* (citing *Home & Nature, Inc. v. Sherman Specialty Co.,* 322 F.Supp.2d 260, 266 (E.D.N.Y. 2004) (quoting *Krasselt v. Joseph E. Seagram & Sons*, 2002 WL 1997926, at *1 (S.D.N.Y. Aug. 29, 2002)).

The second prong of the contributory copyright infringement analysis—proof that the defendant had knowledge of the direct infringement—can be demonstrated by a showing that the defendant was notified of the potential infringement and failed to prevent future infringements. It can also be demonstrated by a showing that the defendant "willfully blind[ed]" itself to the infringement. *Newborn,* 391 F.Supp.2d at 186 (citing *Monotype Imaging, Inc. v. Bitstream, Inc.,* 376 F. Supp. 2d 877, 886 (N.D. Ill. 2005), and *In re Aimster Copyright Litig.,* 334 F.3d 643, 650 (7th Cir. 2003)).

As the Seventh Circuit stated in the appeal of the *Aimster* decision, "willful blindness is knowledge." *Aimster,* 334 F.3d at 650. Moreover, it has long been held that the knowledge standard is an objective one, and "contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1020 (9th Cir. 2001), *as amended* (Apr. 3, 2001)); *see also Gordon v. Pearson Educ., Inc.,* 85 F. Supp.

3d 813, 822 (E.D. Pa. 2015); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014).  Even constructive knowledge is sufficient to meet this requirement. *See Napster,* 239 F.3d at 1020, n. 5 (noting that the Napster executives were experienced in the industry and had enforced their intellectual property rights previously).

The third element of a contributory copyright infringement claim—that the defendant substantially participated in the infringing activity—requires the plaintiff to show "a relationship between the ... services provided by the [d]efendant[ ] and the alleged infringing activity as opposed to the mere operation of the website businesses." *Newborn,* 391 F. Supp. 2d at 186 (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* No. C 04-0371 JW, 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004)).  As the Supreme Court stated in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, "the classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations."  545 U.S. 913, 937 (2005).  The *Grokster* opinion also described the type of "inducement" activity sufficient to satisfy the "substantial participation" requirement, including "active steps . . . to encourage direct infringement" and "actively and knowingly aid[ing] and abet[ing] another's direct infringement[.]" *Id.* at 936 (citing *Oak Indus., Inc. v. Zenith Elecs. Corp.,* 697 F. Supp. 988, 992 (N.D. Ill. 1988) and *Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir. 1988)).

A more specific litany of examples is set forth by the Second Circuit in *Gershwin v. Columbia Artists*, 443 F.2d 1159 (2d Cir. 1971), including the placement of non-infringing advertisements for the sale of infringing records, the shipment of infringing records, and the sale by a department store of infringing records.   All of these entities could be held liable for contributory infringement if they knew or had reason to know of the infringing nature of the records.  *Id.* at 1162.  Subsequent decisions provide more granular examples of the "substantial

participation" requirement, and state that defendants can be held liable for contributory

infringement in situations in which they (1) "invited people to post copyrighted videos;"[6] (2)

"encouraged subscribers to upload [copyrighted] information;"[7] (3) "recruit[ed] individuals….to

'steal' photographs;"[8] and (4) transmitted copyrighted photographs to third parties.[9]

### 2.   Bloomberg Has Routinely Engaged in Contributory Infringement

In this case, all three elements of the contributory infringement claim are met.  For the

first prong, direct infringement of Capitol Forum's copyright by a third party, the Complaint: (a)

identifies the specific copyrighted works that were sent to Bloomberg by Capitol Forum

subscribers in Paragraphs 27 and 32 (Dkt. 1 ¶¶ 27, 32); (b) sets forth the proof of ownership to

the copyrights in those works in Paragraph 22 (*Id.* ¶ 22); (c) sets forth the registration of those

copyrights in Paragraph 22 (*Id.*); and (d) identifies the acts, circumstances and dates of the third-

party infringements in Paragraphs 26 through 29, and 32 (*Id.* ¶¶ 26-29, 32).

The second prong of the contributory analysis: "where a party has been notified of

specific infringing uses of its technology and fails to act to prevent future such infringing uses, or

willfully blinds itself to such infringing uses"[10] – is clearly plead in this case.  The Complaint

alleges that Bloomberg routinely and illegally has been approaching Capitol Forum subscribers

and soliciting and inducing them to commit copyright violations by sending the copyrighted

articles to Bloomberg (*Id.* ¶¶ 4-5); that each of the Capitol Forum articles solicited by Mr.

Fineman contains an explicit copyright notice (*Id.* ¶ 3); that Capitol Forum demanded that

---

[6] *Flava Works, Inc. v. Gunter,* 689 F.3d 754, 758 (7th Cir. 2012).

[7] *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,* 982 F. Supp. 503, 514 (N.D. Ohio 1997).

[8] *BWP Media USA,* 69 F. Supp. 3d at 356.

[9] *Gordon,* 85 F. Supp. 3d at 822.

[10] *Newborn,* 391 F.Supp.2d at 186.

Bloomberg cease this infringing activity and was rebuffed (*Id.* ¶ 8); that Bloomberg knows that the Capitol Forum materials are copyrighted (*Id.* ¶ 9); that Bloomberg's own publications contain copyright warnings stating that any transmission of Bloomberg's materials is illegal (*Id.*); and that when confronted on this inappropriate conduct, Mr. Fineman acknowledged that he would not put the subscriber in that position again.  *Id.* ¶ 28.  This is not the mere willful blindness found sufficient in other cases.  *See, e.g., Aimster,* 334 F.3d at 650.  It is intentional knowing action.

The third element of the contributory copyright infringement claim—that the defendant substantially participated in the infringing activity—is established by Bloomberg's persistent, regular, continuing, and direct requests to Capitol Forum subscribers to transmit to it the copyrighted reports as plead in Paragraphs 4, 5, and 26 through 29 (*Id.* ¶¶ 4,5, 26-29); and by Bloomberg's refusal to stop this conduct when confronted by Capitol Forum.  *Id.* ¶ 8.  This conduct goes well beyond the defendants' conduct in the file sharing cases cited above, in which the defendants simply provided the means to infringe.  And unlike many of the file sharing cases, in this case there is a direct relationship between the infringing activity and the business of the defendant.  Here, the infringing activity was the transmission of the Capitol Forum publications to Bloomberg, an activity that bears a direct relationship to Bloomberg's business—the publication of market news and analyses (including news and analyses copyrighted by Capitol Forum).

This is the "classic case of inducement," where the defendant "solicit[s] [or] broadcasts a message designed to stimulate others to commit violations."  *Grokster,* 545 U.S. at 916.  While *Grokster*, *Gershwin*, *Flava, Playboy*, *BWP* and *Gordon* all teach that the "substantial participation" prong is satisfied by proof that the defendant facilitated the direct infringement by

a third party, the proof of Bloomberg's participation in these copyright violations is far more extensive.  Bloomberg does not simply send out advertisements for the sale of infringing material, or ship infringing material, or encourage people to upload infringing material onto its website.  It goes significantly beyond these more common acts of inducement by personally contacting Capitol Forum subscribers with specific requests to transmit copyrighted materials. And it does so in exchange for other market information.  Bloomberg's conduct in this regard transcends the conduct of the defendants in every reported contributory infringement case.

### 3.   The First Amendment is No Defense to Copyright Infringement

Bloomberg's motion to dismiss the contributory infringement claim is based on its assertion that it has a First Amendment privilege to acquire copyrighted material from its "sources."  First, any such privilege assertion is an affirmative defense which is inappropriate for resolution on a 12(b)(6) motion.  More significant, however—and as a matter of law—there is no such defense.

Simply put, it has been consistently held that the First Amendment does not protect copyright infringement—and cannot be invoked to impinge upon intellectual property rights. Since the Supreme Court's decision in *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-60, 569 (1985), the courts have uniformly rejected First Amendment challenges to copyright infringement actions.  *See Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 849 (11th Cir. 1990) (with respect to copyright protection, "[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property."); *Hard Drive Prods., Inc. v. Does 1-1,495,* 892 F. Supp. 2d 334, 338 (D.D.C. 2012) ("the First Amendment's protection is not absolute and does not extend to copyright infringement."); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 349 (D.D.C. 2011) ("[c]opyright infringement

is not protected by the First Amendment."); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp.

2d 556, 563 (S.D.N.Y. 2004) ("[p]arties may not use the First Amendment to encroach upon the

intellectual property rights of others."); *Universal City Studios, Inc. v. Reimerdes,* 82 F.Supp.2d

211, 220 (S.D.N.Y. 2000) (the "Supreme Court . . . has made it unmistakably clear that the First

Amendment does not shield copyright infringement").

In *Eldred v. Reno*, the D.C. Circuit went so far as to state that "copyrights are

categorically immune from challenges under the First Amendment." 239 F.3d 372, 375 (D.C.

Cir. 2001), *aff'd sub nom., Eldred v. Ashcroft*, 537 U.S. 186 (2003).  While the Supreme Court

observed that the categorical nature of this statement was overly broad, it nevertheless affirmed

the decision and concluded that "when . . . Congress has not altered the traditional contours of

copyright protection, further First Amendment scrutiny is unnecessary."  *Eldred v. Ashcroft*, 537

U.S. 186, 221 (2003).

In so doing, the *Eldred* Court explained that copyright law already contains "built-in First

Amendment accommodations," which are recognized through the fair use doctrine and the

dichotomy between ideas and expression (making only the latter eligible for copyright

protection).  537 U.S. at 219.  Copyright law and the First Amendment must be viewed to exist

in harmony: "[t]he Copyright Clause and First Amendment were adopted close in time. This

proximity indicates that, in the Framers' view, copyright's limited monopolies are compatible

with free speech principles. Indeed, copyright's purpose is to *promote* the creation and

publication of free expression."  *Id.*

The law is thus clear that any concerns relating to free speech and free expression are

fully accommodated by the fair use doctrine—and, conversely, anything outside the fair use

exception is not protected by the First Amendment.  As the court stated in *Reimerdes*, "[t]o the

extent there is any tension between free speech and protection of copyright, the Court has found it to be accommodated fully by traditional fair use doctrine, with expression prohibited by the Copyright Act and not within the fair use exception considered unprotected by the First Amendment." 82 F.Supp.2d at 220; *see also Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 74 (2d Cir. 1999) ("[w]e have repeatedly rejected First Amendment challenges to injunctions from copyright infringement on the ground that First Amendment concerns are protected by and coextensive with the fair use doctrine."); *New Era Publications Int'l, ApS v. Henry Holt & Co.,* 873 F.2d 576, 584 (2d Cir. 1989) ("[w]e are not persuaded . . . that any first amendment concerns not accommodated by the Copyright Act are implicated . . . . Our observation that the fair use doctrine encompasses all claims of first amendment in the copyright field . . . never has been repudiated."); *United Video,* 890 F.2d at 1191 ("the familiar idea/expression dichotomy of copyright law, under which ideas are free but their particular expression can be copyrighted, has always been held to give adequate protection to free expression."); *Luck's Music Library, Inc. v. Ashcroft,* 321 F. Supp. 2d 107, 118-19 (D.D.C. 2004), *aff'd sub nom., Luck's Music Library, Inc. v. Gonzales,* 407 F.3d 1262 (D.C. Cir. 2005) (same citing *Eldred*).  Here, Bloomberg's First Amendment defense is to the contributory infringement claim, which has nothing to do with any "fair use" issue.

Bloomberg's argument that the First Amendment somehow protects its contributory infringement sidesteps this consistent precedent, and instead rests upon a few cases that have fashioned a journalistic privilege in certain instances.  *See* Dkt. 12-1 pp. 9-11.  Not one of these cases involves copyright law, and in any event, all of these cases make it clear that any journalistic privilege exists only if the material at issue is "lawfully obtained."  *See Smith v. Daily Mail Pub. Co.,* 443 U.S. 97, 105-106 (1979) (where the holding of the case was "narrow"

17

and the "issue [was] simply the power of a state to punish the truthful publication of an alleged juvenile delinquent's name *lawfully* obtained by a newspaper" in violation of a criminal statute.) (emphasis added); *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 837 (1978) (where the question was "whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the Judicial Inquiry and Review Commission" and noting that the court was not "concerned with the possible applicability of the statute to one who secures the information by *illegal* means and thereafter divulges it.") (emphasis added); *Seminole Tribe of Fla. v. Times Pub. Co.,* 780 So. 2d 310, 316 (Fla. Dist. Ct. App. 2001) (tortious interference case citing *Smith* and noting that the United States Supreme Court has articulated the "limited First Amendment principle" that "if a newspaper *lawfully* obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.") (emphasis added*); Anti-Defamation League of B'nai B'rith v. Superior Court,* 67 Cal. App. 4th 1072, 1093 (1998) (invasion of privacy claim where the problem related not so much to the manner in which petitioners may have *obtained* the information in question, but the manner in which they may have *used and disseminated* that information.); *Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509, 512-13 (Ct. App. 1986) (involving invasion of privacy claim and agreeing "that illegal conduct by a reporter is not privileged simply because the ultimate purpose is to obtain information to publish.").  As such, not one of these cases bear remotely on the situation presented here, given that they have nothing to do with copyright law, and because the copyrighted material in this case was not obtained legally.

18

### 4. Bloomberg "Substantially Participated" in Infringing Activities

In the alternative, Bloomberg argues that it did not contributorily infringe Capitol Forum's copyright protections because its activities did not rise to "the level of substantial participation" required.  Dkt. 12-1 at 13.  This alternative argument ignores the nature and extent of what Mr. Fineman actually did.  Mr. Fineman did not simply provide the Capitol Forum subscribers with the "opportunity" or "means" to infringe, which was the extent of the defendants' conduct in the cases Bloomberg relies upon for this argument.[11]  Nor did Mr. Fineman simply provide his sources with access to copyrighted documents as Bloomberg suggests.  *See* Dkt. 12-1 at 14.  In this case, Mr. Fineman took affirmative steps to solicit and induce the Capitol Forum subscribers to send him the Capitol Forum publications.[12]  As the Supreme Court stated in *Grokster,* the solicitation of others to commit copyright violations is the "*classic instance of inducement.*" 545 U.S. at 916 (emphasis added).

Bloomberg's further assertion that it did not "substantially participate" in the infringement because there was no relationship between its activities and the infringing activities, citing *Newborn,* is non-sensical.  *See* Dkt. 12-1 at 13.  This matter does not involve an electronic file sharing system where there may be a tenuous relationship between the business of the defendant and the infringing activities.  In this case, there is a direct and critical link between Bloomberg's business and the infringing activities:  Bloomberg is a publisher, and it has been sourcing its stories illegally from the Capitol Forum subscribers.

---

[11] *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796-97 (9th Cir. 2007); *Capitol Records, Inc. v. Foster,* No. 04-cv-1569-W, 2007 WL 1028532, at *3 (W.D. Okla. Feb. 6, 2007); *Quiroga v. Fall River Music, Inc.,* No. 93-cv-3914 (RPP), 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998); *Display Producers, Inc. v. Shulton, Inc.,* 525 F. Supp. 631, 633 (S.D.N.Y. 1981).

[12] "The inducement rule . . . premises liability on purposeful, culpable expression and conduct." *Grokster,* 545 U.S. at 937.

Finally, we must address Bloomberg's statement that it is unaware of any journalist being held liable for sending and receiving copyrighted documents. *See* Dkt. 12-1 at 11. Even if that is true, there is a good reason for it: most journalists, and certainly responsible journalists, do not solicit and induce copyright infringements. That is also the reason that the recent case law on this type of activity generally involves pornographic magazines and salacious websites. *See, e.g., Flava Works,* 689 F.3d 754; *Balsley v. L.F.P., Inc.,* No. 1:08-cv-491, 2008 WL 11378897 (N.D. Ohio Dec. 2, 2008); *Playboy Enterprises,* 982 F. Supp. 503. The simple fact of the matter is that responsible journalists do not behave in this fashion, and in that regard we note that Bloomberg has yet to come forward with any evidence for its claim that the solicitation of copyrighted material is a "routine journalistic practice."

### C.  The Statute of Limitations Does Not Bar Any of the Copyright Claims

Because this Court dismissed Capitol Forum's previous action, and closed the case, Bloomberg argues that under the precedent set forth in *Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476 (D.C. Cir. 2016) and *Ciralsky v. C.I.A.*, 355 F.3d 661 (D.C. Cir. 2004), the statute of limitations was not tolled during the pendency of the previous action, thus barring any claims of alleged infringement occurring before December 11, 2016, as the present action was filed December 12, 2019. Dkt. 12-1 at 14-15.

Preliminarily, it should be noted that, even if applicable here, this precedent would serve to bar only the copyright claims, as the state law claims were specifically preserved under 28 U.S.C. Section 1367(d), Dkt. 22 at 11,[13] and Capitol Forum filed this present action within 30 days after the dismissal. Further, this statute of limitations issue is an affirmative defense, and not appropriate for resolution on a motion to dismiss under Rule 12(b)(6).

---

[13] Referring to Prior Action.

But there is a more fundamental reason why the pre-December 11, 2016 claims should remain in this case—and that is the doctrine of equitable tolling.  As the Supreme Court held in *Menominee Indian Tribe of Wisconsin,* 136 S. Ct. at 756, a litigant is entitled to equitable tolling if it has been diligent in pursuing its claim, yet was nevertheless time barred because of an extraordinary circumstance "outside its control."  It would be exceedingly unfair to bar some of Capitol Forum's claims under these circumstances.  There can be no question that Capitol Forum has been diligent in pursuing these claims, and the circumstances which would otherwise lead to dismissal were extraordinary and certainly outside of Capitol Forum's control.  As the Tenth Circuit observed in *United States v. Collins*, 364 F. App'x 496, 498 (10th Cir. 2010), an extraordinary circumstance should be considered when a litigant filed a defective pleading within the limitations period, as here.  The sanction of the statute of limitations is intended as a deterrent to those litigants who have slept on their rights and that is not the case here.  *See Edes v. Verizon Commc'ns, Inc.,* 417 F.3d 133, 142 (1st Cir. 2005) ("the primary purpose of a statute of limitations is to prevent[ ] plaintiffs from sleeping on their rights and [to] prohibit[ ] the prosecution of stale claims.") (internal quotation omitted); *United States v. Gen. Elecs., Inc.,* 556 F. Supp. 801, 805 (D.N.J. 1983) ("A general purpose of all statutes of limitations is to prevent a claimant from sleeping on his rights . . .")

### D.  Capitol Forum's Publications Are Protected Under the Hot News Doctrine

The "hot news doctrine" is a common law tort that exists to prevent free-riding in the news industry.  It provides a limited exception, and for a limited period of time, to protect certain "facts" that would not otherwise be entitled to copyright protection.  This doctrine recognizes that when time-sensitive information is generated at considerable time and expense, it would be unfair to permit competitors to copy that work and thus misappropriate the profit potential of that

21

work.  These free-riding situations qualify for protection and are not preempted if the following

conditions are met: (1) the information is created at considerable cost or expense; (2) the value in

the information is time sensitive; (3) the conduct of the defendant constitutes free-riding; (4) the

parties are in direct competition; and (5) the ability to free-ride on the back of its direct

competitor would threaten or reduce the plaintiff's incentive to continue its level of investigation

and reporting.  These elements were spelled out in the Second Circuit's 1997 *NBA* case.[14]

The "hot news" doctrine was revisited in 2011 in the *Barclays* case.[15]  There, the court

held that the particular claim presented in that case was preempted by federal law.  Preemption

was found because the parties were not direct competitors and the conduct of the defendants did

not constitute "free riding."  As the court observed, the plaintiffs were not involved in the

process of acquiring and developing news stories "through efforts akin to reporting."  *Id.* at 903.

They were not news organizations; they were investment banks issuing stock recommendations.

Rather than *reporting* the news, the court held that they were actually *creating* the news

themselves through their buy/sell recommendations.[16]

The situation presented in this case is markedly different.  Here, Capitol Forum is a news

organization.  Here, Capitol Forum and Bloomberg are direct competitors.  And here Bloomberg

is free-riding on Capitol Forum's work.  *Barclays* makes clear that the critical element of a "hot

news" claim is the free-riding on the back of a competitor.  *See also Fox News Network, LLC v.*

---

[14] *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841 (2d Cir. 1997).

[15] *Barclays Capital Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876 (2d Cir. 2011).

[16] Bloomberg tries to wedge this case into the *Barclays* facts by arguing that, just like the bank recommendations in *Barclays*, Capitol Forum releases (all of them) are "newsworthy financial events" in and of themselves.  Dkt. 12-1 at 1.  While Capitol Forum appreciates the compliment, the analogy is inapt.  First, unlike the relationship between the Barclays bank and the Flyonthewall reporting service, Capitol Forum is a news organization, and stands in direct competition to Bloomberg.  Second, the analogy proves too much.  Were this the case, no news organization could ever seek to recover under the "hot news" doctrine, yet the *Barclays*' court makes clear that the doctrine acts to protect those who "acquire [the news] through efforts akin to reporting."  650 F.3d at 903.

*TVEyes, Inc.,* 43 F. Supp. 3d 379, 399 (S.D.N.Y. 2014) (hot news claim was preempted where defendant did not "free-ride" on the news services).  The *Barclays* court specifically acknowledged that it was "mindful" of the Supreme Court's concern in *Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918) regarding: "*news, data, and the like, gathered and disseminated by one organization as a significant portion of its business, taken by another entity and published as the latter's own in competition with the former."*  650 F.3d at 905 (emphasis added).  Echoing this rationale, the *Barclays* court then laid out the type of situation in which the "hot news" doctrine applies: if the plaintiff were to collect and disseminate facts it generated itself and the defendant were to copy those facts.

This is free-riding—and this is precisely the situation presented here.  Capitol Forum devotes considerable time to developing the news it reports.  Its investigations are extensively researched and vetted.  Many of its reports take months to prepare.  Yet Bloomberg, comfortable in its "routine newsgathering practices," just sits back, makes arrangements with a few Capitol Forum subscribers to receive the reports, and then repackages the information and sends it out to its (paying) subscribers.

## 1.   The Hot News Doctrine Is Necessary to Prevent Free-Riding and Encourage High Quality Journalism

For the reasons discussed above, the hot news doctrine serves an important function in the news industry.  This doctrine, limited in time and scope, is necessary to ensure that larger and more established news organizations are restricted in the use they can make of the reporting efforts undertaken by more recent market entrants, such as Capitol Forum.  Without some degree of protection, organizations like Bloomberg would be free to profit from the work of less established news companies, and the incentives to produce first class journalism would be

reduced—or eliminated.  Indeed, a recent journal article published by the ABA[17] called for federal legislation to codify this doctrine in cases (as here) where the information is the type essential to the plaintiff's business; provides a benefit to society; and would be unlikely to be generated without the incentive of protection for a limited period of time.  Chief among the author's concerns were the necessity to prevent free-riding and the need to provide an incentive to journalistic initiatives.

Bloomberg's "public policy" concerns to the contrary are overstated.  This case does not involve the type of news in which the general public has a strong interest.  This case does not concern "threat[s] to public health or security," as Bloomberg suggests.  Doc. 12-1 at 19.  Nor does this case concern national conflicts, or election results, or weather alerts—matters in which the public has "a right to receive such information and ideas as are published." *Houchins v. KQED, Inc.,* 438 U.S. 1, 29 n.17 (1978).  Rather, this case involves business news and financial transactions—the types of information that are likely important to the institutional investor, but not necessarily to the general public.  The institutional investors who subscribe to these news services understand that this information is generated at considerable cost—and are willing to pay significant subscription costs to receive it, which renders this information even more susceptible to free-riding and, as such, deserving of protection.  Moreover, with respect to Bloomberg's policy concern that the enforcement of the hot news doctrine would be unworkable and unenforceable in today's media "ecosystem," the simple answer is that the hot news doctrine only protects free-riding by *direct competitors.*  In any particular market sector, the number of competitive news organizations is limited in quantity, and can be readily monitored.

---

[17] *See* Lindsay G. Rabicoff, Comment, *The Hot News Misappropriation Doctrine: Confusion in the Internet Age and the Call for Legislative Action*, 53 Jurimetrics J. 71–95 (2012).

The fact that this tort has not been recognized to date in the District of Columbia is of no moment.  The lack of case law simply reflects the reality that the doctrine has never been litigated here.  As a practical matter, this tort is one that finds applicability and traction in matters involving financial markets and financial publications.  The parties involved in these endeavors are generally located in New York.  That is where these types of cases are more often litigated, and that is the jurisdiction "that has most heartily embraced the doctrine."  Edmund J. Sease, *Misappropriation Is Seventy-Five Years Old; Should We Bury It or Revive It?*, 70 N.D. L. Rev. 781, 801 (1994).  As such, the fact that Capitol Forum is based in the District of Columbia should not work to its disadvantage.  Founded in 2012, Capitol Forum is the first and only organization domiciled in the District of Columbia to establish a premium subscription based financial news service—and it should be entitled to the same protections that its New York competitors receive.

The recent *Dow Jones & Co. v. Real-Time Analysis & News, Ltd.* case provides context to this point.  No. 14-cv-131, 2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014*), report and recommendation adopted*, No. 14-cv-131, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014).  Dow Jones, publisher of the *Wall Street Journal* and other financial publications, operates a service known as "DJ Dominant" that provides real-time business news and analysis to financial professionals.  This service is provided for a fee and Dow Jones does not authorize third parties to redistribute the content.  However, the defendant in that case, Ransquawk, did just that: systematically reproducing and redistributing the news content published by Dow Jones.  Dow Jones brought a "hot news" claim in New York against Ransquawk, alleging that this free-riding by one of its competitors was likely to undermine Dow Jones' economic incentive to invest in

the costly process of reporting time-sensitive news. The New York court agreed, and found that this hot news misappropriation claim stated a valid claim for relief.

Capitol Forum stands in exactly the same position vis a vis Bloomberg that Dow Jones did with respect to Ransquack. Both Capitol Forum and Dow Jones have made significant investments in their investigation and reporting of financial developments. Both Bloomberg and Ransquawk are free-riding on this "costly process of reporting time-sensitive news." Furthermore, Capitol Forum also competes against Dow Jones in the reporting of financial news. It would seem markedly inequitable for Dow Jones, but not Capitol Forum, to receive the benefit of free-riding protections in its home jurisdiction.

Finally, this tort has been recognized in fourteen other jurisdictions, including New York, Missouri, Texas, Pennsylvania, California, Alaska, Colorado, Illinois, North Carolina, South Carolina, Wisconsin, New Jersey, Maryland and Delaware.[18] The only two jurisdictions that failed to adopt the doctrine, Hawaii and Massachusetts, did so in cases involving much different facts, matters having nothing to do with news reporting.[19] The doctrine has particular vitality in situations, as here, where one news organization copies the work of one of its competitors. As the courts and commentators appear to agree, these are the situations most deserving of protection.

### 2. Capitol Forum's Hot News Claim is Not Preempted

Bloomberg's preemption argument, at pages 19 through 21 of its brief, appears to miss the mark. Dkt. 12-1 at 19-21. According to Bloomberg "courts have consistently held that

---

[18] 70 N.D. L. Rev. at 801-02.

[19] *See New England Tel. & Tel. Co. v. National Merchandising Corp.,* 141 N.E.2d 702 (Mass. 1957) (relating to the distribution of opaque plastic covers for telephone directories); *Famolare, Inc. v. Melville Corp.,* 472 F.Supp. 738 (D.Haw. 1979) (relating to the alleged copying of the wavy-bottom soles of plaintiff's shoes).

misappropriation claims grounded in acts of copying are preempted by the Copyright Act."  *Id.*
at 20.  From this, Bloomberg asserts that because Capitol Forum is asserting a claim in which
one of the elements is copying, the claim is preempted in its entirety.  But clearly, not all copying
claims are preempted.  Indeed, the *Barclays* case specifically states that a hot news claim would
lie when the plaintiff would collect and disseminate the facts and the defendant would "copy the
facts."  650 F.3d at 906; *see also BanxCorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d 596, 614
(S.D.N.Y. 2010) (where copying was alleged, hot news claim was not preempted and, therefore,
the motion to dismiss that claim was denied); *Associated Press v. All Headline News Corp.,* 608
F. Supp. 2d 454, 461 (S.D.N.Y. 2009) (where allegations of unlawful copying of news stories
was alleged, the court held that the hot news claim was not preempted and denied motion to
dismiss); *X17, Inc. v. Lavandeira,* 563 F. Supp. 2d 1102, 1107, 1108-09 (C.D. Cal. 2007) (where
plaintiff alleged unlawful copying of celebrity photographs, the court found that the hot news
claim was adequately pleaded and not preempted.).

 Bloomberg also argues that the hot news doctrine cannot survive in the wake of *Feist
Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991).  But *Feist* did not overrule the
hot news doctrine—and it came nowhere close to doing so.  In fact, writing for the majority,
Justice O'Connor noted the possibility of a "hot news" misappropriation remedy in that case:
"The Court ultimately rendered judgment for Associated Press [in the *INS* case] on non-
copyright grounds that are not relevant here."  *Id.* at 354, fn.  Further, *Feist* was decided in 1991,
and virtually all of the significant hot news cases, including *NBA* and *Barclays*, were decided
since then.

### 3. Capitol Forum Has Properly Pleaded a Hot News Misappropriation Claim

Bloomberg asserts that Capitol Forum has failed to properly plead a misappropriation claim.  It cites four reasons: (1) Capitol Forum has not identified the time sensitive facts copied by Bloomberg; (2) Bloomberg cannot be accused of "free-riding" because it cites Capitol Forum in its articles; (3) Capitol Forum is not reporting on the news because it is "making the news;" and (4) Capitol Forum has not alleged that Bloomberg's practices will put it out of business.

Initially, it must be noted that these factors are not elements of Capitol Forum's misappropriation claim.  If anything, they are elements of Bloomberg's preemption defense.  Capitol Forum has asserted an unfair competition and misappropriation claim, the elements of which are: "(1) time, labor, and money spent in the creation of the thing misappropriated, (2) a competitive relationship between plaintiff and defendant and (3) commercial damage to the plaintiff."  *GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,* 27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975).  These elements are pleaded in the complaint.

The four issues raised above by Bloomberg are relevant only to its preemption defense.  Because preemption is an affirmative defense, the burden is on Bloomberg to both plead and prove them.  *See, e.g., Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) ("[p]reemption is an affirmative defense that the defendant has the burden to prove"); *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 912 (6th Cir. 2007) ("[f]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof."); *Ibrahim v. Titan Corp.,* 391 F. Supp. 2d 10, 17-18 (D.D.C. 2005) ("preemption . . . is an affirmative defense, with the burden of proof on the defendants").

Nevertheless, while these matters are clearly not the gist of a motion to dismiss, Capitol Forum will address each of them below.

### i. The complaint sufficiently alleges the copying of time sensitive facts

Bloomberg asserts that the Complaint lacks sufficient specificity because it does not "identify any specific time-sensitive factual information" that has been misappropriated. This assertion simply ignores the fact that the Complaint, in Paragraph 32, lists specifically all of the articles that Bloomberg has misappropriated. Dkt. 1 ¶ 32. Further, the time sensitive nature of the Capitol Forum publications is pleaded repeatedly in the complaint, including Paragraphs 2, 18, 24, 45, 66, and 67. In particular, Capitol Forum alleges at paragraph 66 that "the newsworthy information that Capitol Forum gathers, analyzes and reports is valuable to many of its customers in large part because of its time sensitive nature." *Id.* ¶ 66. It is difficult to comprehend Bloomberg's claim that Capitol Forum's allegations do not state a "plausible claim" for hot news misappropriation. Bloomberg should certainly be able to appreciate the plausibility of the time-sensitive allegations. Why else would it copy and disseminate Capitol Forum's publications within minutes of receiving them, repackaging them as its own "news alerts"?

### ii. Free-riding exists regardless of attribution

Bloomberg asserts that Capitol Forum has not sufficiently pleaded "free-riding" because Bloomberg doesn't sell the Capitol Forum reports as its own, but rather "credits" Capitol Forum as its source. Bloomberg is incorrect in its assertion that a hot news claim must fail where attribution is made.

In *INS*, the Supreme Court specifically distinguished the defendant's failure to attribute its news content to AP as a separate issue from the hot news misappropriation. 248 U.S. at 242 ("*Besides the misappropriation*, there are elements of imitation, of false pretense, in defendant's practices [and] . . . the habitual failure to give credit to [AP]") (emphasis added). Indeed, the Supreme Court was careful to note that the defendant's false pretenses and "habitual failure to

29

give credit," "although accentuating the wrong, *are not the essence of it.*" *Id.* (emphasis added.).

Rather, the "essence" of a hot news claim focuses on "an unauthorized interference with the

normal operation of a complainant's legitimate business [in time sensitive information] precisely

at the point where the profit is to be reaped, in order to divert a material portion of the profit

from those who have earned it to those who have not; with special advantage to defendant in the

competition because of the fact that it is not burdened with any part of the expense of gathering

the news." *Id.* at 240.

The Second Circuit in *NBA* described the heart of a hot news claim and recognized AP's

property interest at stake:

> *INS* is not about ethics; it is about the protection of property rights
> in time-sensitive information so that the information will be made
> available to the public by profit seeking entrepreneurs. If services
> like AP were not assured of property rights in the news they pay to
> collect, they would cease to collect it. The ability of their
> competitors to appropriate their product at only nominal cost and
> thereby to disseminate a competing product at a lower price would
> destroy the incentive to collect news in the first place. The
> newspaper-reading public would suffer because no one would have
> an incentive to collect "hot news."

105 F.3d at 853.  The Second Circuit in *Barclays* did not disturb this key finding of *NBA*.

Moreover, the court's decision in *Barclays* turned not on a lack of "passing off" the

plaintiffs' stock recommendations as Fly's own, but instead on the fact that Fly was not "free

riding" in the *INS* sense; Bloomberg thus improperly equates "free riding" with failure of

attribution.  *See also GAI Audio of New York*, 27 Md. App. at 192 (Under Maryland law, the tort

of unfair competition is limited neither to "passing off" one's own goods as a competitor's nor to

"passing off" a competitor's goods as one's own.); *Ideal Toy Corp. v. Kenner Prod. Div. of Gen.*

*Mills Fun Grp., Inc.,* 443 F. Supp. 291, 305 (S.D.N.Y. 1977) (Under New York law, unfair

competition is not limited to circumstances where one party attempted to "pass off" his goods as

those of another, but "encompasses a broader range of unfair trade practices generally described

as the misappropriation of the skill, expenditures and labors of another."). Although its

conclusion that Fly was not free riding on the Firms' stock recommendations did reference the

fact that Fly was attributing the recommendations to the Firms, the Second Circuit's holding was

based principally on its conclusion that Barclays and the other investments firms were "making"

news in their stock recommendations, and Fly was just "breaking" it. *See Barclays*, 650 F.3d at

902.

Bloomberg also asserts that there is no free-riding here because the market will act

immediately upon Capitol Forum's release of its articles, such that Bloomberg's subsequent

release of the information can have no effect, and thus provides Capitol Forum with the same

amount of incentive to continue publishing despite Bloomberg's interference. Not only is this a

highly factual defense, requiring discovery and trial, but it involves the very unlikely assumption

that Bloomberg subscribers gain no market advantage from receiving the First Word reports, and

that the Capitol forum reports contain only information that will have immediate market effect.

### iii. Capitol Forum acts as a news organization in acquiring and reporting the facts

Bloomberg's third point is that Capitol Forum does not qualify for protection under the

hot news doctrine because, like the plaintiff banks in the *Barclays* case, it is not reporting the

news, but rather is "making the news." Yet the difference between Capitol Forum and the

Barclay banks is significant—and determinative on this point. Unlike the banks, as Capitol

Forum has pleaded, it is a news organization, and directly competes with Bloomberg. Were

Capitol Forum to be considered a newsmaker rather than a news reporter, no news organization

could ever qualify for protection under this doctrine.  Finally, it goes without saying that the posture of Capitol Forum—news maker or news reporter—is a factual issue inappropriate for disposition on a motion to dismiss.

### iv.  Capitol Forum need not plead that Bloomberg's practices will put it out of business

Bloomberg's final point is that Capitol Forum did not plead that Bloomberg's activities "threaten[] the very existence of Capitol Forum."  Dkt. 12-1 at 24.  This assertion is evidently based upon a misinterpretation of the *NBA* case.  The court in *NBA* described this last free-riding element in two different ways.  In one passage, it stated that the inquiry depended on whether the defendant's free-riding would reduce the incentive to produce the product or service such that its existence or quality would be substantially threatened.  *NBA*, 105 F.3d at 852.  In another passage, the court stated that this element depended on whether the free-riding would be a threat to the very existence of the product or service provided by the plaintiff.  *Id.* at 853.

The *Barclays* court noted the inconsistency and commented that the first iteration addressed the incentive to continue to provide quality publications, whereas the second iteration addressed whether the defendant's conduct removed any profit potential and would effectively cut off the plaintiff's business.  While the *Barclays* court did not specifically resolve this inconsistency, its ensuing discussion did not embrace Bloomberg's view that a misappropriation claim can lie only if the continued viability of the plaintiff's business is threatened by the defendant's conduct.  Indeed, it concluded a hot news claim would be appropriate in situations where the plaintiff collects and disseminates the facts and the defendant then copies those facts, regardless of any threat to the plaintiff's existence.

In any event, the cases decided in the wake of the *NBA* and *Barclays* decisions have consistently focused their inquiry on whether the quality of the plaintiff's publications would be

threatened or reduced—and not on whether the plaintiff would be forced out of business. *See All Headline News Corp.,* 608 F. Supp. at 461 (denying motion to dismiss hot news claim where *NBA*'s five element test was set forth in the complaint, which includes showing "the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened."); *Fox News*, 43 F. Supp. 3d at 398 (citing the five-part *NBA* test to prevail on a hot news claim, which includes showing "the ability of other parties to free-ride on efforts of plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.").

No case has ever held that the tort of hot news misappropriation is appropriate only if the defendant's conduct will force the plaintiff out of business.  Moreover, any such requirement would make no economic sense, as it would permit the defendant to continue to free-ride and continue to harm the plaintiff, as long as the plaintiff were able to stay in business.  The far better rule is to require a showing that the defendant's free-riding would threaten the plaintiff's incentive to continue its investigative reporting at the same level, and that is what Capitol Forum has pleaded in paragraph 67 of the complaint.  Dkt. 1 ¶ 67.

## V.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated:   Washington, DC
         February 27, 2020

                                 Respectfully submitted,


                           By:   */s/ John B. Williams*
                                 John B. Williams (DC Bar #257667)
                                 Fara N. Kitton (DC Bar #1007793)
                                 WILLIAMS LOPATTO PLLC
                                 1200 New Hampshire Ave., NW, Ste. 750
                                 Washington, DC  20036
                                 Tel.: (202) 296-1611
                                 jbwilliams@williamslopatto.com

                                 *Counsel for Plaintiff*

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2020, a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was filed electronically with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which sent notification of such filing to Plaintiff's counsel of record:

Tara M. Lee, Esq. (taralee@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005

Robert L. Raskopf (robertraskopf@quinnemanuel.com)
Jessica A. Rose (jessicarose@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010


*/s/ John B. Williams*
John B. Williams