**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DBW PARTNERS, LLC d/b/a THE CAPITOL
 FORUM,

|  |  |
|---|---|
| Plaintiff, | Case No. 19-cv-3715-RBW |
| v. |  |

BLOOMBERG, L.P. and BLOOMBERG
 FINANCE, L.P.,

Defendants.

**DEFENDANTS BLOOMBERG L.P.'S AND BLOOMBERG FINANCE L.P.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

<u>**Page**</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................3

I.     THE COPYRIGHT CLAIMS SHOULD BE DISMISSED .................................................3

     A.     The Complaint Fails To State A Claim For Direct Copyright Infringement ..........3

     B.     The Complaint Fails To State A Claim For Contributory Copyright
            Infringement ........................................................................................6

           1.     Bloomberg's Newsgathering Techniques Do Not Constitute
                  Contributory Infringement As A Matter of Law ...........................6

           2.     Bloomberg Did Not "Substantially Participate" In The Alleged
                  Infringement .......................................................................9

     C.     Capitol Forum's Copyright Claims Dating Before December 11, 2016 Are
            Barred By The Statute Of Limitations .................................................12

II.     THE "HOT NEWS" MISAPPROPRIATION CLAIM SHOULD BE DISMISSED ........14

     A.     The "Hot News" Misappropriation Claim Is Preempted By The Copyright
            Act .................................................................................................15

     B.     Capitol Forum Does Not Plead The Elements Of The New York Tort That
            Could Potentially Survive Federal Preemption .......................................16

     C.     The "Hot News" Tort Is Obsolete And Should Not Be Recognized Under
            District Of Columbia Law .................................................................20

CONCLUSION ........................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*\*Anti-Defamation League of B'Nai B'rith v. Superior Court,*
67 Cal. App. 4th 1072 (1998) ............................................. 6, 7

*Associated Press v. All Headline News Corp.,*
608 F. Supp. 2d 454 (S.D.N.Y. 2009)..................................... 19

*BanxCorp v. Costco Wholesale Corp.,*
723 F. Supp. 2d 596 (S.D.N.Y. 2010)..................................... 19

*\*Barclays Capital Inc. v. Theflyonthewall.com, Inc.,*
650 F.3d 876 (2d Cir. 2011)........................................... 15, 17

*Bird v. Real Time Resolutions, Inc.,*
2017 WL 661375 (N.D. Cal. Feb. 17, 2017) ........................... 14

*Blakeman v. Walt Disney Co.,*
613 F. Supp. 2d 288 (E.D.N.Y. 2009) ..................................... 5

*Brought to Life Music, Inc. v. MCA Records, Inc.,*
2003 WL 296561 (S.D.N.Y. Feb. 11, 2003)............................ 9, 10

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC,*
69 F. Supp. 3d 342 (S.D.N.Y. 2014)..................................... 10

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
902 F.2d 829 (11th Cir. 1990) ........................................... 8

*Call of the Wild Movie, LLC v. Does 1-1,062,*
770 F. Supp. 2d 332 (D.D.C. 2011)....................................... 8

*Chung v. DOJ,*
333 F.3d 273 (D.C. Cir. 2003)........................................... 12

*Ciralsky v. C.I.A.,*
355 F.3d 661 (D.C. Cir. 2004).......................................... 13

*Davis v. D.C.,*
949 F. Supp. 2d 1 (D.D.C. 2013)......................................... 7

*Dow Jones & Co. v. Real-Time Analysis & News, Ltd.,*
2014 WL 4629967 (S.D.N.Y. Sept. 15, 2014).......................... 18, 19

*\*Dupree v. Jefferson,*
666 F.2d 606 (D.C. Cir. 1981).......................................... 13

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
  749 A.2d 724 (D.C. 2000) ................................................................................ 12

**\*Feist Publ's, Inc. v. Rural Tel. Serv. Co.*,**
  499 U.S. 340 (1991) ......................................................................................... 4

*Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*,
  808 F.2d 204 (2d Cir. 1986) ........................................................................... 17

*Flava Works, Inc. v. Gunter*,
  689 F.3d 754 (7th Cir. 2012) .......................................................................... 11

*GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.*,
  27 Md. App. 172 (Md. Ct. Spec. App. 1975) .................................................. 14

*\*Gaines v. D.C.*,
  961 F. Supp. 2d 218 (D.D.C. 2013) ............................................................. 5, 6

*Gal v. Viacom Int'l, Inc.*,
  403 F. Supp. 2d 294 (S.D.N.Y. 2005) ............................................................. 5

*\*Galbreath v. Dudas*,
  2006 WL 156701 (D.D.C. Jan. 20, 2006) ....................................................... 13

*Gannett Satellite Info. Network, Inc. v. Rock Valley Cmty. Press, Inc.*,
  1994 WL 606171 (N.D. Ill. Oct. 24, 1994) ..................................................... 17

*GEICO v. Fetisoff*,
  958 F.2d 1137 (D.C. Cir. 1992) ...................................................................... 20

*Gershwin Pub. Corp. v. Columbia Artists Management*,
  443 F.2d 1159 (2d Cir. 1971) .......................................................................... 10

*Gordon v. Pearson Educ., Inc.*,
  85 F. Supp. 3d 813 (E.D. Pa. 2015) ................................................................. 11

*Hard Drive Prods., Inc. v. Does 1-1,495*,
  892 F. Supp. 2d 334 (D.D.C. 2012) .................................................................. 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) .......................................................................................... 7

*In re APA Assessment Fee Litig.*,
  766 F.3d 39 (D.C. Cir. 2014) ........................................................................... 20

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*,
  81 F. Supp. 2d 70 (D.D.C. 2000) ..................................................................... 15

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918) ............................................................................................... 19

*Irwin v. Dep't of Veterans Affairs*,
498 U.S. 89 (1990) ................................................................................................. 13

*Koker v. Aurora Loan Servicing, LLC*,
915 F. Supp. 2d 51 (D.D.C. 2013) ........................................................................ 12

*Lamphier v. Wash. Hosp. Ctr.*,
524 A.2d 729 (D.C. 1987) ...................................................................................... 20

*Livnat v. Lavi*,
1998 WL 43221 (S.D.N.Y. Feb. 2, 1998) .............................................................. 10

*Lloyd v. Ingenuity Prep Pub. Charter Sch.*,
368 F. Supp. 3d 25 (D.D.C. 2019) ........................................................................ 12

*Menominee Indian Tribe of Wisconsin v. United States*,
136 S. Ct. 750 (2016) ............................................................................................. 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 936–37 (2005) ......................................................................................... 10

*Mondy v. Sec'y of the Army*,
845 F.2d 1051 (D.C. Cir. 1988) ......................................................................... 2, 12

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997) ........................................................... 2, 16, 17, 18, 19

*Nicholson v. McClatchy Newspapers*,
177 Cal. App. 3d. 509 (1986) .................................................................................. 6

*Nnadili v. Chevron U.S.A., Inc.*,
435 F. Supp. 2d 93 (D.D.C. 2006) ........................................................................ 20

*Norman v. United States*,
467 F.3d 773 (D.C. Cir. 2006) ............................................................................... 12

*Playboy Enterprises v. Russ Hardenburgh*,
982 F. Supp. 503 (N.D. Ohio 1997) ...................................................................... 10

*Prunte v. Universal Music Group*,
484 F. Supp. 2d 32 (D.D.C. 2007) .......................................................................... 4

*Prunty v. Vivendi*,
130 F. Supp. 3d 385 (D.D.C. 2015) ......................................................................... 5

*Quiroga v. Fall River Music, Inc.*,
   1998 WL 851574 (S.D.N.Y. Dec. 7, 1998) ............................................................... 9

*Ross v. Walton*,
   668 F. Supp. 2d 32 (D.D.C. 2009) ......................................................................... 18

*Rudkowski v. MIC Network, Inc.*,
   2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018) .......................................................... 5

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
   489 F.3d 474 (2d Cir. 2007)..................................................................................... 6

*Scrappost, LLC v. Peony Online, Inc.*,
   2017 WL 697028 (E.D. Mich. Feb. 22, 2017) ......................................................... 21

*\*Seminole Tribe of Florida v. Times Pub. Co., Inc.*,
   780 So. 2d 310 (Fla. Dist. Ct. App. 2001) ............................................................ 6, 7

*\*Smith-Haynie v. D.C.*,
   155 F.3d 575 (D.C. Cir. 1998) ............................................................................ 7, 12

*Sony Music Entm't Inc. v. Does 1-40*,
   326 F. Supp. 2d 556 (S.D.N.Y. 2004).................................................................... 8

*Ste. Genevieve Media, LLC v. Pulitzer Missouri Newspapers, Inc.*,
   2016 WL 6083796 (E.D. Mo. Oct. 18, 2016) ......................................................... 16

*\*Sturdza v. United Arab Emirates,* 281 F.3d 1287 (D.C. Cir. 2002)........................................ 1, 3

*United States v. Collins*,
   364 F. App'x 496 (10th Cir. 2010) ........................................................................ 14

*Universal City Studios, Inc. v. Reimerdes*,
   82 F. Supp. 2d 211 (S.D.N.Y. 2000)...................................................................... 8

*Whitehead v. Paramount Pictures Corp.*,
   53 F. Supp. 2d 38 (D.D.C. 1999) .......................................................................... 15

*Williams v. Curington*,
   662 F. Supp. 2d 33 (D.D.C. 2009) ........................................................................ 15

*X17, Inc. v. Lavandeira*,
   563 F. Supp. 2d 1102 (C.D. Cal. 2007) ................................................................ 19

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 5, 12, 16

## **Statutes**

17 U.S.C. §107.................................................................................................................. 6, 7

## **Other Authorities**

Restatement (Second) of Conflict of Laws § 145(2) ..................................................... 20

Restatement (Second) of Torts § 876(b)........................................................................ 9

Restatement (Third) of Unfair Competition § 38 cmt. b (1995).................................... 21

Richard A. Posner, *Misappropriation:*
   *A Dirge*, 40 Hous. L. Rev. 621 (2003)..................................................................... 21

Defendants Bloomberg L.P. and Bloomberg Finance L.P. (collectively, "Bloomberg") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint, *see* ECF No. 12, filed by Plaintiff DBW Partners, LLC d/b/a The Capitol Forum ("Capitol Forum") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Capitol Forum has failed adequately to plead any of the claims it asserts against Bloomberg.

*First*, the Complaint does not plausibly allege that Bloomberg's *First Word* stories are substantially similar to Capitol Forum's copyrighted works because the Complaint does not identify a single word of protectable expression that Bloomberg is alleged to have copied. As Capitol Forum admits in its Opposition to the Motion to Dismiss, it has not identified any protectable expression, but rather relies on identifying the titles of the alleged infringed and infringing works to satisfy its pleading requirement. *See* ECF No. 16 ("Opposition" or "Opp.") at 8. This is insufficient under *Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1295 (D.C. Cir. 2002) (plaintiff must show "both ownership of a valid copyright ***and*** that the defendant copied original or 'protectible' aspects of the copyrighted work") (emphasis added), and similar cases.

*Second*, the Complaint does not plausibly allege that Bloomberg has engaged in contributory copyright infringement by seeking documents from its sources. Not only do Bloomberg's requests to sources fail to rise to the level of "substantial participation" in the alleged infringement, a prerequisite for a claim for contributory liability, these requests are ordinary news- and information-gathering activities that are protected by fair use (which in turn is based upon First Amendment concerns). The cases cited by Capitol Forum are inapposite because Bloomberg's alleged conduct does not involve a primary business model devoted to soliciting infringement. Instead, Bloomberg's alleged conduct is one part of a broader endeavor to gather

information (which is not copyrighted) and to report the news (which concerns facts rather than protectable expression by others).

*Third*, Capitol Forum's copyright claims that pre-date December 2016 should be dismissed as untimely because the D.C. Circuit does not recognize the application of the "equitable tolling" doctrine where, as here, previously asserted claims are no longer timely following a dismissal without prejudice. Capitol Forum's unsuccessful litigation strategy of opposing the motion to dismiss in the Prior Action rather than amending its original complaint is not the type of "extraordinary and carefully circumscribed instances" beyond a plaintiff's control that would justify tolling. *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

*Finally,* Capitol Forum's "hot news" claim should be dismissed as preempted by the Copyright Act. Even assuming the "hot news" claim survives preemption (which it does not), Capitol Forum fails, among other things, to allege an essential element: "the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997) ("*NBA*"). Specifically, Capitol Forum has not pleaded—nor can it—that its own reporting activity is threatened by Bloomberg's later-in-time news articles. To the contrary, the Complaint and Opposition demonstrate that any potential subscriber who wishes to obtain a market advantage from the information contained in a Capitol Forum report must obtain that information directly from Capitol Forum because the stock price will have already moved by the time Bloomberg's (or another news organization's) article is published. That audience is sufficient to provide Capitol Forum an adequate "incentive to produce the product or service." *Id.*

2

## ARGUMENT

I.   **THE COPYRIGHT CLAIMS SHOULD BE DISMISSED**

A.   **The Complaint Fails To State A Claim For Direct Copyright Infringement**

The Complaint fails plausibly to allege direct infringement by Bloomberg because the Complaint does not identify any protectable expression Bloomberg is alleged to have copied that is substantially similar to Capitol Forum's own expression.  Capitol Forum argues that its direct copyright claims should survive dismissal because the question of "substantial similarity" should not be decided on a motion to dismiss unless the asserted and allegedly infringing works are appended to the complaint.  Opp. at 1–2, 8–10.  This argument sidesteps the issue.  Bloomberg is ***not*** arguing that this Court should decide on the pleadings whether the accused Bloomberg works are "substantially similar" to Capitol Forum's asserted works—even though, as explained below, numerous courts have decided this issue based on the complaint and a review of allegedly infringing and infringed works attached to the complaint.  Such review would be impossible here since Capitol Forum's Complaint does not even excerpt the allegedly similar portions of the works, much less attach the works in full.

Instead, Bloomberg's argument is that, to survive dismissal, Capitol Forum must ***plausibly allege*** that Bloomberg has copied ***protectable expression*** owned by Capitol Forum that could give rise to a claim of direct copyright infringement.  *See Sturdza*, 281 F.3d at 1295 (plaintiff must show "both ownership of a valid copyright ***and*** that the defendant copied original or 'protectible' aspects of the copyrighted work") (emphasis added).  In the context of this case, which involves one news outlet reporting on newsworthy facts that were previously published by another news

outlet, plausibility means identifying the actual protectable expression (as opposed to unprotectable facts) that is alleged to have been copied.  Capitol Forum has not done this.[1]

Rather than identify the allegedly copied protectable expression that forms the basis of its claims, Capitol Forum asks the Court to *infer* that Bloomberg has copied expression that is protectable from Capitol Forum's articles and used it in Bloomberg's *First Word* news stories.  *See* Compl. ¶ 56 ("the copying of Plaintiff's reports is substantial in quality and quantity").  Such an inference is *not plausible* in the context of this case because Bloomberg's *First Word* stories are short, highly factual news reports written solely to relay information to the financial markets quickly, and it is well-settled that neither facts nor ideas are subject to copyright protection.  *See Feist Publ's, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

For example, the Complaint identifies some Capitol Forum reports allegedly sent to a Bloomberg reporter, including an August 22, 2017 report regarding Fresenius Medical Care's potential acquisition of NxStage Medical and related antitrust concerns.  *See* ECF No. 1-2 at 3–8; *see also* Exhibit A.  Capitol Forum has not identified a single word of protectable expression that Bloomberg is alleged to have copied from this five-page report.  A comparison between Bloomberg's *First Word* alert (*see* Exhibit B), a half page with six bullet points, and the August 22, 2017 Capitol Forum report (a five-page analysis) demonstrates that Bloomberg is reporting only on newsworthy, unprotectable facts.  Capitol Forum has not identified any protectable expression that has been copied from its report, and even if Bloomberg had copied any of Capitol

---

[1]  Capitol Forum argues that  substantial similarity "is not an issue to be addressed at the motion to dismiss phase," citing to *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 41 (D.D.C. 2007).  Opp. at 1.  In *Prunte*, Judge Friedman held only that the court *need not decide* whether the works are substantially similar as a matter of law at the pleading stage.  But nothing in *Prunte* excuses a plaintiff from failing to *plausibly allege* substantial similarity, as Capitol Forum has done here.  Similarly, in the Prior Action, the Court stated that it "need not engage in the substantial similarity analysis" on a motion to dismiss, not that substantial similarity did not have to be plausibly alleged.  *See* Prior Action, ECF No. 22 at 6.

Forum's protectable expression, such copying was at most *de minimis* and, therefore, does not constitute copyright infringement.

Capitol Forum also argues that it has remedied its previous failure to "identify the specific infringed works that form the basis for Capitol Forum's copyright claims" by adding a chart listing the **titles** of the accused works into the Complaint.  Opp. at 8 (quoting Prior Action, ECF No. 22). But listing the titles of the asserted infringed and infringing works again falls far short of identifying what, if any, protectable expression Bloomberg allegedly has taken from within Capitol Forum's works.

Finally, Capitol Forum concedes that, had it provided more information by attaching to its Complaint reprints of the asserted and allegedly infringing works and identifying the protected expression allegedly copied, this Court would be in a position to resolve the issue of substantial similarity as a matter of law at the pleadings stage.[2]  Capitol Forum did not identify the alleged protectable expression copied or attach the works because doing so would demonstrate beyond question that it cannot state a claim.  Capitol Forum's strategic decision not to attach reprints of the works should not save its direct infringement claim from dismissal.[3]

---

[2]  *See* Opp. at 9 (noting that when the complaint attaches both the asserted and allegedly infringing works, the court can "determine for itself if that material is not substantially similar"); *see also Gaines v. D.C.*, 961 F. Supp. 2d 218, 223 n.4 (D.D.C. 2013) ("as the Court may consider the documents attached to the Complaint in resolving the motion to dismiss, the Court will also consider the question of similarity between GIRLP and the March 2012 Mega Millions® ticket in the context of the motion to dismiss"); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 305 (S.D.N.Y. 2005) ("there is ample authority for the proposition that a district court may make [a determination as to substantial similarity] on a motion to dismiss for failure to state a claim under Rule 12(b)(6)"); *Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 298 (E.D.N.Y. 2009) ("many courts have, after comparing the works at issue, dismissed infringement claims for failure to state a claim where substantial similarity between the works cannot be found") (citing cases).

[3]  The cases Capitol Forum cites in fact bolster Bloomberg's position that had Capitol Forum provided sufficient information in its Complaint, the Court could resolve the substantial similarity issue at the motion-to-dismiss phase. *See* Opp. at 9; *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390 (D.D.C. 2015) ("this court is capable of concluding as a matter of law, without the assistance of expert testimony, that [alleged infringed and infringing song lyrics] are not substantially similar"); *Gaines,* 961 F. Supp. 2d at 224 (D.D.C. 2013) ("The attachments to Gaines' Complaint provide sufficient evidence to the Court to determine that there was no copyright infringement . . . ."); *Rudkowski v. MIC Network, Inc.,* 2018 WL 1801307, at *3 (S.D.N.Y. Mar. 23, 2018) ("When visual works are at issue and (as here) are

**B.      The Complaint Fails To State A Claim For Contributory Copyright Infringement**

      **1.      Bloomberg's Newsgathering Techniques Do Not Constitute Contributory Infringement As A Matter of Law**

Free-speech and free-press principles embodied in the First Amendment protect journalists from tort liability where—as here—those journalists obtain information from sources using ordinary newsgathering techniques. *See Seminole Tribe of Florida v. Times Pub. Co., Inc*., 780 So. 2d 310, 318 (Fla. Dist. Ct. App. 2001); *Anti-Defamation League of B'Nai B'rith v. Superior Court*, 67 Cal. App. 4th 1072, 1082, 1093 (1998); *Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d. 509, 513 (1986). The allegedly tortious behavior at issue here—namely, a journalist's exchanging copyrighted documents and information with sources as part of his news reporting process—does not constitute contributory infringement as a matter of law.

The fair use doctrine balances these First Amendment principles with copyright protections. *See, e.g., Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 482 (2d Cir. 2007) ("the fair use doctrine balances the competing interests of the copyright laws and the First Amendment"). Indeed, the Copyright Act expressly permits the fair use of copyrighted works in connection with news reporting. *See* 17 U.S.C. §107 (identifying "news reporting" as a quintessential non-infringing fair use). Although the enumerated statutory factors[4] are tailored to assess fair use in cases of direct copyright infringement (*i.e.*, where a defendant has itself published or otherwise

---

attached to the pleadings or otherwise cognizable on a motion to dismiss, the Court must determine whether a reasonable jury could find substantial similarity based upon a comparison of the two works.") (citation omitted). These cases do not assist Capitol Forum because they did not involve a complaint that, like Capitol Forum's Complaint here, failed even to allege what protectable expression in the allegedly infringed work was copied in the allegedly infringing work.

[4]  Those factors include: "(1) the purpose and character of the use . . .; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

used the protected expression), the First Amendment principles that underlie the fair use doctrine apply in the contributory-infringement context, as explained below.[5]

The newsgathering cases cited by Bloomberg, which discuss and apply the important principles related to newsgathering embodied in the First Amendment and which hold that journalists were not subject to various kinds of tort liability, provide a framework for analyzing Bloomberg's alleged wrongdoing at the motion-to-dismiss stage, whether under the First Amendment or the fair use doctrine it informs. *See, e.g.*, *Seminole Tribe of Florida*, 780 So. 2d at 314, 318 (affirming dismissal of amended complaint against newspaper and reporters and finding that "routine news gathering techniques," including "reporters' solicitation and procurement of confidential information," could not support a claim against the newspaper and reporters for tortious interference with contract); *see also Anti-Defamation League of B'Nai B'rith,* 67 Cal. App. 4th at 1082, 1093 ("solicit[ing] and receiv[ing] confidential information" in violation of privacy statute "constitutes legitimate newsgathering").

None of the authorities cited by Capitol Forum in the Opposition precludes Bloomberg from asserting the fair use doctrine.[6] *See* Opp. at 15–18. Rather, these cases state that copyright law itself takes core First Amendment principles (like those at issue in the newsgathering cases)

---

[5]  Contrary to Capitol Forum's suggestion, the Copyright Act does not say that fair use is inapplicable to **contributory** infringement (*i.e.*, where a defendant is accused of aiding infringement by a third party), and the Supreme Court has emphasized that the fair use factors are **non-exclusive** and that courts must decide every case on its own unique facts. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985) (The factors enumerated in the section are not meant to be exclusive: "[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.") (citation omitted).

[6]  Capitol Forum's assertion that Bloomberg's First Amendment defense cannot be raised in a motion to dismiss is incorrect. *See Smith-Haynie v. D.C.*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[W]e now explicitly hold that an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint."); *Davis v. D.C.*, 949 F. Supp. 2d 1, 12 (D.D.C. 2013) (same).  This standard plainly applies here, where Capitol Forum's claims explicitly relate to Bloomberg's newsgathering and reporting.

into consideration through the application of fair use. [7] These cases are **consistent** with Bloomberg's argument that the alleged sharing of copyrighted documents and information between Bloomberg's journalists and their sources is non-infringing as a matter of law.

Capitol Forum also argues that the newsgathering cases cited by Bloomberg do not apply because "they have nothing to do with copyright law." Opp. at 18. But copyright infringement is akin to the torts that were at issue in those cases, insofar as all of them are subject to First Amendment limits in the sphere of news- and information-gathering and news reporting. The facts of Bloomberg's authorities are much closer to the allegations in the Complaint than are the facts of the copyright cases cited by Capitol Forum. Each of the cases cited by Bloomberg involves journalists gathering newsworthy documents for the purposes of news reporting, and each, guided by principles embodied in the First Amendment (and consistent with copyright fair use), held those practices were not tortious. A similar outcome is warranted here: principles of free speech and freedom of the press operate to preclude claims of contributory infringement against Bloomberg arising out of routine newsgathering practices.

Capitol Forum argues that the newsgathering cases cited by Bloomberg are distinguishable because the Complaint alleges that the Capitol Forum newsletters were not "lawfully obtained" by Bloomberg. Opp. at 17–18. This argument is circular and merely begs the question. The conduct

---

[7]  In addition, Capitol Forum's cases are inapposite because they evaluate the First Amendment protections afforded to free speech (largely anonymous internet speech), not protections afforded to newsgathering and freedom of the press. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (finding "no protection under the First Amendment" for defendants speech and noting that "commercial speech [is] accorded lesser protection than other constitutionally guaranteed expression"); *Hard Drive Prods., Inc. v. Does 1-1,495*, 892 F. Supp. 2d 334, 338 (D.D.C. 2012) ("where defendants' expressive activity is alleged to infringe plaintiff's copyright, defendants' First Amendment right to anonymity is 'exceedingly small'") (citation omitted); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 349 (D.D.C. 2011) (same); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 563 (S.D.N.Y. 2004) (same); *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 221 (S.D.N.Y. 2000) (finding "no First Amendment objection" to Copyright Act amendment "prohibiting the dissemination of means for circumventing technological methods for controlling access to copyrighted works").

at issue in the newsgathering cases cited by Bloomberg was alleged to be unlawful in those cases until the courts determined it was protected activity and hence was not unlawful.

### 2. Bloomberg Did Not "Substantially Participate" In The Alleged Infringement

Capitol Forum argues that "Bloomberg's persistent, regular, continuing, and direct requests" for copies of the Capitol Forum newsletter from sources, if proven, would establish "substantial participation" in the infringement.  Opp. at 14.  Not so.  At most, these allegations could establish that Bloomberg's requests for documents provided Capitol Forum's subscribers with the *opportunity to infringe*—which is insufficient to impose secondary liability.  *See Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) ("an allegation that a defendant 'merely provid[ed] the means to accomplish an infringing activity' is insufficient to establish a claim for contributory infringement") (citation omitted); *Quiroga v. Fall River Music, Inc.*, 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998) ("[a] mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct would not even be enough to survive a motion to dismiss"); *see also* Restatement (Second) of Torts § 876(b) (secondary tort liability requires "substantial assistance" to the tortfeasor).

Similarly, Capitol Forum claims that Mr. Fineman "took affirmative steps to solicit and induce the Capitol Forum subscribers to send him the Capitol Forum publications."  Opp. at 19. The Complaint, however, describes no such affirmative steps.  Rather, it offers the conclusory allegation that Mr. Fineman "induced" Capitol Forum subscribers to provide him with copies of its reports.  Compl. at ¶ 27.  And for good reason—the allegations are that a Bloomberg journalist sought documents and exchanged information as part of an ongoing journalist-source relationship, not the type of substantial participation required for contributory liability.  Inducement liability occurs where "one [ ] distributes a device with the object of promoting its use to infringe copyright,

as shown by clear expression or other affirmative steps taken to foster infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 936–37 (2005) ("*Grokster*"). "Participation sufficient to establish a claim of contributory infringement may not consist of merely providing the 'means to accomplish an infringing activity.'" *Livnat v. Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (citation omitted). Rather, "participation in the infringement must be 'substantial' and the 'authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer.'" *Brought to Life Music, Inc.*, 2003 WL 296561, at *2 (quoting *Livnat*, 1998 WL 43221, at *3).

The cases cited by Capitol Forum demonstrate that Bloomberg's alleged conduct is insufficient as a matter of law to support a claim of secondary liability. *See* Opp. 13–14. Unlike Bloomberg, each of the defendants in these cases actively participated in the infringement of the copyrighted works with the underlying objective of enabling infringement as a central component of the defendant's business strategy. In *Grokster*, for example, the primary purpose of defendants' business was to facilitate mass-infringement through file-sharing software that was "aim[ed] to satisfy a known source of demand for copyright infringement," which indicated "a principal, if not exclusive, intent to bring about infringement." 545 U.S. at 916. Similarly, in *Gershwin Pub. Corp. v. Columbia Artists Management*, 443 F.2d 1159 (2d Cir. 1971), the defendant's "pervasive participation in the formation and direction" of the infringing activity formed the basis of its secondary liability because it "created the . . . audience as a market" for the infringing works. *Id.* at 1163. Again, in *Playboy Enterprises v. Russ Hardenburgh*, 982 F. Supp. 503 (N.D. Ohio 1997), the defendants operated an online service designed to facilitate and encourage users to upload copyrighted images to be shared with other users of the service. *Id.* at 506, 514. In *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d. 342 (S.D.N.Y. 2014), the plaintiff alleged

that the defendants' "'entire business' is sustained by displaying 'stolen' or improperly licensed photographs" and "encouraging the webmasters to infringe Plaintiffs' copyrights." *Id.* at 348, 355. In *Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813 (E.D. Pa. 2015), the defendant entered into a license agreement limiting the reproduction and distribution of plaintiff's photographs in textbooks to certain geographic areas, but then actively participated in the infringement by sending the textbooks to third parties for the purpose of reproducing and distributing them in the restricted areas. *Id.* at 822. Once again, the plaintiff in that case alleged that the defendant's "business model is built on a foundation of pervasive and willful copyright infringement." *Id.* at 815. Thus, inducing infringement was a key component of the defendants' business model and profits in each of the cases cited by Capitol Forum in support of its contributory infringement claim. *See* Opp. at 13–14.[8]

Bloomberg's alleged conduct, on the other hand, does not rise to the level of inducement or substantial participation in the infringement present. Bloomberg's journalists are alleged to have engaged in the age-old practice of asking their sources for copies of documents and exchanging information as part of their newsgathering efforts. The sources, who are Capitol Forum's own subscribers, are free to decline Bloomberg's requests at any time. That the documents provided to Bloomberg are subject to copyright protection—as virtually all documents are—does not render Bloomberg's conduct unlawful. Moreover, Capitol Forum has not and cannot allege that Bloomberg's alleged contributory infringement is an essential part of Bloomberg's business model. To the contrary, Bloomberg's primary purpose is to gather and

---

[8] One of the cases cited by Capitol Forum in fact directly supports Bloomberg's position that Capitol Forum has failed to state a claim for contributory copyright infringement. In *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012) (cited at Opp. at 13–14), the court held that the defendant ***did not*** substantially participate in the unlawful uploading of the plaintiff's copyrighted videos even though it operated a website that bookmarked those videos for uploaders. *Flava Works, Inc.*, 689 F.3d at 758.

report the news, and copyright infringement in which Bloomberg's sources engage, if any, is incidental to Bloomberg's business.

### C.   Capitol Forum's Copyright Claims Dating Before December 11, 2016 Are Barred By The Statute Of Limitations

Contrary to Capitol Forum's protestations, its copyright claims accruing before December 11, 2016 are barred by the statute of limitations as a matter of law.  *See* Opp. at 20–21.  Capitol Forum first posits that it is "not appropriate" to resolve statute of limitations questions on a motion to dismiss.  That position is contrary to the law of this Circuit.  *See Lloyd v. Ingenuity Prep Pub. Charter Sch.*, 368 F. Supp. 3d 25, 26 (D.D.C. 2019) ("A party may raise a statute of limitations argument in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'when the facts that give rise to the defense are clear from the face of the [document].'") (quoting *Smith-Haynie*, 155 F.3d at 578); *Koker v. Aurora Loan Servicing, LLC*, 915 F. Supp. 2d 51, 58 (D.D.C. 2013) ("A defendant may raise affirmative defenses, such as statutes of limitations and res judicata, in a Rule 12(b)(6) motion.") (Walton, J.); *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 734 (D.C. 2000) ("Although the defense of statute of limitations is not listed in the rule, the defense also may be raised by a motion to dismiss under Rule 12(b)(6).").

Capitol Forum next argues that its untimely claims should survive under the doctrine of equitable tolling.  However, this doctrine is reserved only for "extraordinary and carefully circumscribed instances" that are beyond a plaintiff's control.  *Mondy*, 845 F.2d at 1057; *see also Norman v. United States*, 467 F.3d 773, 775 (D.C. Cir. 2006) ("courts have extended this relief 'only sparingly' and have generally denied it where a plaintiff 'failed to exercise due diligence in preserving his legal rights' or showed only 'a garden variety claim of excusable neglect'") (citation omitted); *Chung v. DOJ*, 333 F.3d 273, 279 (D.C. Cir. 2003) (equitable tolling "ensures that the

plaintiff is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit" ).

Importantly, D.C. courts have held that the doctrine of equitable tolling ***does not*** extend to circumstances, such as those here, where previously asserted claims are no longer timely following a dismissal without prejudice. *See Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981) ("under District of Columbia law the pendency of an action involuntarily dismissed without prejudice does not operate to toll the running of the statute of limitations").

Although Capitol Forum is correct that equitable tolling may protect plaintiffs who have "actively pursued [their] judicial remedies by filing a defective pleading during the statutory period," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), choosing not to amend a timely-filed complaint is ***not*** the type of "defect" contemplated by equitable tolling jurisprudence. This court has evaluated precisely this issue. In *Galbreath v. Dudas*, 2006 WL 156701 (D.D.C. Jan. 20, 2006), the plaintiff sought to equitably toll patent claims dismissed and later refiled in a second complaint. *Id.* at *2. The court stated that this circumstance "is not like those in which a technical defect has prevented a litigant from filing his claim in time." *Id.* The "original complaint was timely filed in the correct court, preserving [plaintiff's] rights. It was thus not 'defective' in the sense used by the *Irwin* Court. Rather, only upon a motion to dismiss did Galbreath's complaint become vulnerable." *Id.* Instead of amending the complaint and curing the problems identified in the motion to dismiss, Galbreath, like Capitol Forum, "made 'a series of legal arguments explaining why the complaint'" satisfied the pleading standards. *Id.* (citation omitted). "Manifest injustice does not exist where, as here, a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Id.* (citing *Ciralsky v. C.I.A.,* 355 F.3d 661, 673 (D.C. Cir. 2004); *see also Bird v. Real Time*

13

*Resolutions, Inc.*, 2017 WL 661375, at *7 (N.D. Cal. Feb. 17, 2017) (equitable tolling not warranted where dismissal "appears to be solely the result of [plaintiff's] personal preference and/or strategy"). Here, the situation under which the statute of limitations ran was neither extraordinary nor beyond Capitol Forum's control; to the contrary, Capitol Forum made a strategic decision not to amend its complaint in the Prior Action, despite being on notice that the complaint did not provide proper notice of the claims alleged. As such, Capitol Forum's alleged infringement claims pre-dating December 11, 2016 fall outside the statute of limitations and should be dismissed.[9]

## II.   THE "HOT NEWS" MISAPPROPRIATION CLAIM SHOULD BE DISMISSED

Capitol Forum's "hot news" claim is preempted by the Copyright Act because it seeks to vindicate rights that are protected by the Copyright Act. And even if this Court were to find that the "hot news" claim somehow survived preemption, Capitol Forum's allegations fail to satisfy the elements required where the tort has been recognized (under New York law). Finally, D.C. law has never recognized the tort. For all these reasons, Capitol Forum's "hot news" claim is defective and should be dismissed with prejudice.[10]

---

[9]   While Capitol Forum cites *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750 (2016), and *United States v. Collins*, 364 F. App'x 496 (10th Cir. 2010), to support its cursory argument that its pre-December 11, 2016 claims should be preserved, *see* Opp. at 21, both ***declined*** to extend equitable tolling to the claims at issue, and the holdings do not support Capitol Forum's assertion that it would be "exceedingly unfair" to bar its claims. *Id.*

[10]   Capitol Forum equivocates on which state's/district's law it is invoking—District of Columbia, Opp. at 25, or New York, *id.* at 22–23—and provides no choice-of-law analysis. At one point, Capitol Forum also cites a Maryland case. *See id.* at 28 (citing *GAI Audio of New York, Inc. v. Columbia Broad. Sys., Inc.,* 27 Md. App. 172, 190 (Md. Ct. Spec. App. 1975) for elements of "hot news" misappropriation). Capitol Forum identifies no contacts, however, between the instant case and Maryland. D.C. is the proper choice of law here, because according to Capitol Forum "a substantial part of the events giving rise to the claims occurred in [D.C.]," Compl. ¶ 17. The District of Columbia has indisputably never recognized a "hot news" claim, and it would be a novel and substantial ruling for this Court to do so here, especially given significant modern criticism of the claim as contrary to public policy.

A.    **The "Hot News" Misappropriation Claim Is Preempted By The Copyright Act**

Rather than engage with the substantive law defining the parameters of preemption, Capitol Forum issues a blanket declaration that "not all copying claims are preempted." Opp. at 27. That general statement does nothing to demonstrate that Capitol Forum's particular copying claims survive preemption, which they do not.

A claim is preempted if: (1) the claim seeks to vindicate legal or equitable rights that are equivalent to exclusive rights already protected by the Copyright Act; and (2) the work in question is of the type of works protected by the Copyright Act. *See Williams v. Curington*, 662 F. Supp. 2d 33, 40 (D.D.C. 2009). Here, both elements are met: the essence of Capitol Forum's "hot news" misappropriation claim is that Bloomberg purportedly copied and distributed Capitol Forum's copyrightable content. *See* Compl. ¶ 67.

Furthermore, Capitol Forum has not identified any extra element beyond copying that saves its "hot news" claim from preemption. *See Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 73 (D.D.C. 2000) ("To gauge Kitchen Exhaust's unfair-competition claim, the court applies the 'extra element' test . . . .To survive preemption, Kitchen Exhaust's unfair-competition claim must qualitatively require at least one element in addition to those needed to make out a Copyright Act claim."); *see also Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 53 (D.D.C. 1999) ("allegation that defendants improperly distributed and disseminated [plaintiff's] work clearly is preempted by the Copyright Act, since unauthorized distribution of a copyrighted work is explicitly covered by the Copyright Act"), *aff'd sub nom*. 2000 WL 33363291 (D.C. Cir. Apr. 19, 2000); *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 902 (2d Cir. 2011) ("hot news" claim was preempted by Copyright Act).

As such, Capitol Forum's "hot news" claim is equivalent to its copyright infringement claim, as it requires no additional element beyond the allegation of unauthorized copying of Capitol Forum's works, and that claim is preempted by the Copyright Act and must be dismissed.

**B.     Capitol Forum Does Not Plead The Elements Of The New York Tort That Could Potentially Survive Federal Preemption**

While the Second Circuit has held that a narrow "hot news" misappropriation claim under New York law survives federal preemption, the surviving claims have been limited to cases in which the following elements are satisfactorily alleged:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

*NBA*, 105 F.3d at 845.

These are elements of the ***cause of action*** that must be sufficiently pleaded to survive Rule 12(b)(6) dismissal, not (as Capitol Forum contends, Opp. at 28) factors merely relevant to a preemption defense that might be adjudicated after the Rule 12(b)(6) stage.  *See NBA*, 105 F.3d at 852 (listing "the elements central to an *INS* claim"); *see also Ste. Genevieve Media, LLC v. Pulitzer Missouri Newspapers, Inc.*, 2016 WL 6083796, at *4 (E.D. Mo. Oct. 18, 2016) (listing the Second Circuit's "elements necessary to establish a 'hot news' claim").  Capitol Forum tellingly admits as much in the introduction to its Opposition, conceding that *NBA* "enunciated" the "***elements*** of this claim."  Opp. at 4 (emphasis added).

Capitol Forum's inability to allege free riding that would "so reduce" its incentive to produce its content (*NBA*'s fifth element) is dispositive here.  The Second Circuit, in keeping with

the recognition that only the narrowest of claims can survive preemption,[11] stringently requires an allegation that "the ability of other parties to free-ride on the efforts of the plaintiff or others would **so reduce** the incentive to produce the product or service that its existence or quality would be **substantially threatened**." *NBA*, 105 F.3d at 845 (emphasis added).   Capitol Forum, however, misleadingly waters down this element by eliding the italicized words. *See* Opp. at 22 (describing the element as "the ability to free-ride on the back of its direct competitor would threaten or reduce the plaintiff's incentive to continue its level of investigation and reporting").

Capitol Forum's Complaint demonstrates that it cannot satisfy the free-riding element as stringently required by *NBA*.   Specifically, Capitol Forum alleges that "the release of [Capitol Forum's] reports will often affect the price of publicly traded stocks . . . in a matter of minutes," Compl. ¶ 2, and concedes that any allegedly infringing Bloomberg report is published **later**, *see id.* ¶ 4 ("Within minutes of the release of many of Capitol Forum's reports, Bloomberg will illegally obtain the report from one or more of Capitol Forum's subscribers, **and then** republish a summary of that report on its own 'First Word' copyrighted subscription service . . . .") (emphasis added).   In other words, any potential subscriber who wishes to obtain a market advantage from the information must obtain it from Capitol Forum, because the stock price will have already moved by the time Bloomberg's work is published.   That audience is plainly sufficient to provide Capitol Forum an adequate "incentive to produce the product or service." *NBA*, 105 F.3d at 845. *See also, e.g.*, *Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*, 808 F.2d 204, 209 (2d Cir. 1986) ("The 'hot' news doctrine is concerned with the copying and publication of information gathered by another before he has been able to utilize his competitive edge."); *Gannett Satellite Info. Network,*

---

[11]   *See, e.g., Theflyonthewall.com, Inc.*, 650 F.3d at 898 ("It is this sort of patchwork protection that the drafters of the Copyright Act preemption provisions sought to minimize, and that counsels in favor of locating only a 'narrow' exception to Copyright Act preemption.").

*Inc. v. Rock Valley Cmty. Press, Inc.*, 1994 WL 606171, at *5 (N.D. Ill. Oct. 24, 1994) ("The evidence shows that defendant's use of the quoted material occurred only after plaintiff had already published its newspaper articles.  Consequently, plaintiff received the full value of its newsgathering efforts under these facts.").

As with its copyright infringement claims, an example that Capitol Forum attaches to its Complaint (concerning reports on Fresenius Medical Care's potential acquisition of NxStage Medical) illustrates well that Bloomberg's reports do not "so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *NBA*, 105 F.3d at 845.  Capitol Forum published a report at 11:00 a.m. Eastern Time on August 22, 2017, regarding the potential acquisition and the risk that antitrust concerns could foil it.  *See* Exhibit A; ECF 1-2 at 3–8.  Within less than five minutes, NxStage Medical's stock price dropped from approximately $29.10 to $28.60, presumably because investors reviewed the Capitol Forum report and concluded that the acquisition was now less likely to happen.  Exhibit C.[12] ***Thirty-six minutes later***, well after the stock price had already dropped, Bloomberg issued its own report.  *See* Exhibit B.  Thus, any member of the public who had wanted to use the information about antitrust risk to unload (or to short sell) NxStage Medical's stock would have had to subscribe to Capitol Forum; a Bloomberg subscription would have provided the information too late.  As such, Capitol Forum still has a sizeable audience for its service and ample incentive to provide the service, regardless of Bloomberg's reports.[13]

---

[12]   *See Ross v. Walton*, 668 F. Supp. 2d 32, 41 n.7 (D.D.C. 2009) ("[C]ourts may take judicial notice of publicized stock prices without converting a motion to dismiss into summary judgment.").

[13]   Capitol Forum states that not all of the factual information contained in its reports has immediate effect on the market.  *See* Opp. at 31.  While true, that information would not qualify as "hot news."

In the cases cited by Capitol Forum, by contrast, the defendants' work was published before, or nearly instantaneously with, the plaintiffs' work, meaning that there was no time lag during which the plaintiff would have had an exclusive audience from which it could profit.  *See, e.g.*, *Dow Jones & Co. v. Real-Time Analysis & News, Ltd.*, 2014 WL 4629967, at *3 (S.D.N.Y. Sept. 15, 2014) (defendant "often broadcasts [plaintiff's] headlines within five seconds or less of the original posting"), *report and recommendation adopted*, 2014 WL 5002092 (S.D.N.Y. Oct. 7, 2014) (citation omitted); *X17, Inc. v. Lavandeira*, 563 F. Supp. 2d 1102, 1103 (C.D. Cal. 2007) (allowing "hot news" claim where defendant "has at times deprived [plaintiff] of a distinct interest in being the first to publish" photos at issue); *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 238–39 (1918) ("pirated news [was] placed in the hands of defendant's readers sometimes simultaneously with the service competing Associated Press papers, occasionally even earlier"). That is not the case here, where the delay between Capitol Forum's reports and Bloomberg's news alerts, coupled with the immediate stock market moves prompted by Capitol Forum's reports (as alleged in Capitol Forum's own Complaint, *see* Compl. ¶ 2), makes it necessary for investors to subscribe to Capitol Forum.

In addition, that Bloomberg's works attribute Capitol Forum as the source for certain information and/or the breaker of news about unprotectable facts, *see* Compl. ¶ 37, further supports (even if it does not independently establish) that the *NBA* free-riding element is not satisfied here. For example, unlike the defendant in *INS*, who did not acknowledge plaintiff Associated Press as the source of the information, 248 U.S. at 242, Bloomberg credits Capitol Forum as a source.  *See* Compl. ¶ 37.  Again, the cases Capitol Forum cites provide it no support—in each, the defendant published the information as its own without attribution.  *See, e.g., Dow Jones & Co.*, 2014 WL 4629967, at *3 (defendant "does not credit [plaintiff] or other news providers for the stories it

copies"); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 613–14 (S.D.N.Y. 2010) (plaintiffs adequately alleged free riding where defendants used plaintiffs' indices without a license and without attribution); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 457 (S.D.N.Y. 2009) (defendant rewrote or copied plaintiff's stories in full and published them as its own); *INS*, 248 U.S. at 242 (INS sold AP's "goods as its own").  As such, even if this claim survived preemption, Capitol Forum has not and cannot allege "hot news" misappropriation, and this claim should be dismissed with prejudice.

### C.       The "Hot News" Tort Is Obsolete And Should Not Be Recognized Under District Of Columbia Law

If this Court agrees that Capitol Forum has failed to allege a "hot news" claim under New York law as interpreted by the Second Circuit, the Court need not proceed further.  If the Court disagrees, however, it should address the choice-of-law issue raised (but not briefed) in Capitol Forum's opposition and rule as a matter of law that "hot news" misappropriation is inconsistent with public policy and should not be recognized for the first time by D.C. law.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state— here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). The Court must first "determine whether a 'true conflict' exists between the laws of the two jurisdictions—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992).  If there is a true conflict, the Court should "balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in the resolution of the issue." *Lamphier v. Wash. Hosp. Ctr.*, 524 A.2d 729, 731 (D.C. 1987).  That balancing process considers factors including:  (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, place of

incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered. *See Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 97–98 (D.D.C. 2006) (citing Restatement (Second) of Conflict of Laws § 145(2)).

Here, on the threshold issue of whether there is a true conflict, this Court would have to decide whether D.C. law even recognizes the tort of "hot news" misappropriation. It has not to date, and it likely will not in the future. In the Prior Action, the Court correctly observed that this case "involves the question of whether the District of Columbia should recognize a tort for 'hot news' misappropriation under District of Columbia law." Prior Action, ECF No. 22 at 11. That question remains an open one, and courts have interpreted a lack of state law supporting "hot news" misappropriation as a basis to dismiss the claim. *See Scrappost, LLC v. Peony Online, Inc.*, 2017 WL 697028, at *7 (E.D. Mich. Feb. 22, 2017) (court could dismiss plaintiff's "hot news" claim on the basis that it "located no authority to support a 'hot news' misappropriation claim in Michigan" and plaintiff "fails to cite a single case indicating that Michigan courts have adopted 'hot news' misappropriation causes of action"). Capitol Forum incorrectly characterizes "hot news" misappropriation as a vibrant tort that is being recognized more, not less, frequently. *See* Opp. at 25. In fact, the tort is near obsolete now that the Internet facilitates a constant exchange of information, and news reporting often happens in real time. As Judge Richard Posner has observed, "[c]larity of analysis would be enhanced if the doctrine and the very word were banished from discussions of intellectual property law." Richard A. Posner, *Misappropriation: A Dirge*, 40 Hous. L. Rev. 621, 641 (2003). The commentary to the Restatement of Unfair Competition agrees, noting that *INS*, while frequently cited, "has been sparingly applied" because "the federal patent and copyright statutes now preempt a considerable portion of the domain in which the common law tort might otherwise apply." Restatement (Third) of Unfair Competition § 38 cmt. b (1995). "The

better approach, and the one most likely to achieve an appropriate balance between the competing interests, does not recognize a residual common law tort of misappropriation." *Id.*

If the Court finds that D.C. law would not recognize the tort, the Court would then have to consider the Restatement factors quoted above in order to decide whether to apply D.C. or New York law.  Here, the factors weigh in favor of finding that D.C. law applies to Capitol Forum's claims.  While Bloomberg is based in New York, Compl.  ¶¶ 13–14, Capitol Forum is based in D.C., *id.* ¶ 12, and "a substantial part of the events giving rise to the claims occurred in [D.C.]," *id.* ¶ 17.  Thus, the Court should rule that D.C. law applies to Capitol Forum's claims and that, as discussed in Bloomberg's moving brief, D.C. law does not recognize the "hot news" misappropriation tort.

<u>**CONCLUSION**</u>

For the foregoing reasons, Bloomberg respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated:   March 31, 2020
       Washington, D.C.

Respectfully submitted,

/s/ *Tara M. Lee*

Tara M. Lee (#MD17902)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Fax:  (202) 538-8100
taralee@quinnemanuel.com

Robert L. Raskopf (admitted *pro hac vice*)
Jessica A. Rose (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
robertraskopf@quinnemanuel.com
jessicarose@quinnemanuel.com

*Counsel for Defendants Bloomberg L.P.*
*and Bloomberg Finance L.P.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will notify counsel for the Plaintiff of the filing.

*/s/ Tara M. Lee*

Tara M. Lee (#MD17902)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I St. NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Fax:  (202) 538-8100
taralee@quinnemanuel.com